**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-4078
_____


COMMONWEALTH OF PENNSYLVANIA,
DEPARTMENT OF ENVIRONMENTAL PROTECTION

v.

LOCKHEED MARTIN CORPORATION

v.

UNITED STATES OF AMERICA; COMMONWEALTH OF
PENNSYLVANIA; DEPARTMENT OF CONSERVATION
AND NATURAL RESOURCES

Lockheed Martin Corporation,
                                        Appellant


_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-09-cv-00821)
District Judge:  Honorable Sylvia H. Rambo

Argued on September 20, 2011

Before:  AMBRO, CHAGARES and ROTH, <u>Circuit Judges</u>

(Opinion filed: June 5, 2012 )

Raymond B. Ludwiszewski, Esquire
Michael K. Murphy, Esquire (**Argued**)
Daniel E. Schmitt, Esquire
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
9th Floor
Washington, DC   20036

David J. Parsells, Esquire
Stevens & Lee
620 Freedom Business Center
Suite 200
King of Prussia, PA   19406

                 Counsel for Appellant
Julie E. Ravis, Esquire

Stevens & Lee
111 North Sixth St.
Reading, PA   19603

Counsel for Appellant

Kimberly A. Hummel, Esquire (**Argued**)
Office of Chief Counsel
Department of Conservation and Natural Resources
400 Market Street
7th Floor
Harrisburg, PA   17105

Gregory E. Dunlap, Esquire
Office of General Counsel
Commonwealth of Pennsylvania
333 Market Street
17th Floor
Harrisburg, PA   17101

Counsel for Appellee

O P I N I O N

**ROTH**, Circuit Judge:

This appeal involves a dispute between the Lockheed Martin Corporation on one hand and the Commonwealth of Pennsylvania and one of its administrative agencies, the Department of Conservation and Natural Resources (DCNR),

on the other. Lockheed appeals the Order of the District Court, dismissing Lockheed's third-party complaint against the Commonwealth and DCNR. Lockheed contends that the District Court erred by concluding that the Commonwealth and DCNR retained their Eleventh Amendment immunity from suit when the Pennsylvania Department of Environmental Protection (PADEP), another Commonwealth agency, voluntarily filed a complaint in federal court against Lockheed pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9607(a). For the reasons expressed below, we will vacate the judgment of the District Court and remand this case with instructions to dismiss for mootness the third party complaint against the Commonwealth and DCNR. Because of mootness, we will not address the merits of the Eleventh Amendment immunity issue.

## I. **Background**

### A. *Use and Contamination of the Quehanna Facility*

In 1957, as an effort to develop the local economy, the Commonwealth constructed the Quehanna Wild Area Nuclear Site (Facility) in the Quehanna Wild Area of the Moshannon State Forest in Clearfield County, Pennsylvania. After the Facility's construction, the Commonwealth sold and leased a portion of the site to the Curtiss-Wright Corporation. Sometime in the early 1960s, Curtiss-Wright donated the Facility to Pennsylvania State University. From 1962 through 1967, Martin Marietta Corporation, a Lockheed predecessor, leased portions of the Facility from Penn State to conduct work pursuant to Atomic Energy Commission (AEC) contracts. This work involved experimentation with

4

Strontium-90, a radioactive isotope.[1]  Throughout the period that Martin Marietta conducted its research, the AEC, as licensing authority, and Penn State, as landlord, exercised oversight over operations at the Facility.  In 1966, Penn State transferred legal title of the Facility to the Commonwealth.  The following year, Martin Marietta's contract with the AEC expired, and Martin Marietta terminated its activities at the Facility.  As a prerequisite to the contract's termination, Martin Marietta was required, pursuant to the standards established by the AEC and approved by Penn State, to partially decontaminate the Facility.  According to Lockheed, at the time that legal title of the Facility transferred to the Commonwealth, the Commonwealth was aware that unknown quantities of Strontium-90 remained at the site and could not be removed without dismantling the entire Facility, an outcome contrary to its and Penn State's interests.  After Martin Marietta completed the partial decontamination of the Facility, its lease terminated, and, with the Commonwealth's knowledge, it transferred its license for possession of Strontium-90 to Penn State.

When Martin Marietta's involvement with the Facility ended, the Commonwealth leased the site to several other companies that are not parties to this suit.  The new tenants continued to use the Facility for activities involving radioactive materials, including Strontium-90.  Lockheed alleges that as encouragement for one company to lease the Facility, the Commonwealth and PADEP agreed to assume all responsibility for any existing Strontium-90.

---

[1] Martin Marietta's possession and use of Strontium-90 was pursuant to a license from the AEC.

At some point in the 1990s, the Nuclear Regulatory Commission[2] (NRC) ordered the Commonwealth, PADEP, and DCNR to decommission the Facility. This process required the Commonwealth and PADEP to clean up and remove all remaining Strontium-90. As a result, PADEP and the Commonwealth incurred expenses in excess of $20 million.

## B. *Litigation*

In 2009, PADEP, the Commonwealth agency authorized to administer and enforce CERCLA, filed a complaint against Lockheed under CERCLA, 42 § U.S.C. 9607(a), and several state statutes for recovery of approximately $20 million in unreimbursed costs the Commonwealth and PADEP had incurred in connection with their decommissioning of the Facility and removal of the remaining Strontium-90. In its answer to the complaint, Lockheed raised the affirmative defense of recoupment, alleging that "[i]n an allocation of responsibility under CERCLA, Plaintiff should recover less than its demand for equitable reasons, including, but not limited to, its own conduct and liability and the doctrines of unclean hands, estoppel, waiver, laches, and/or other equitable defenses." Lockheed also filed a counterclaim against PADEP, asserting that, if it is liable for PADEP's cleanup costs, it seeks contribution under CERCLA and state law. *See* 42 U.S.C. §

---

[2] The NRC is one of the successor agencies of the AEC. At the time of its formation, the NRC assumed responsibility for the AEC's byproduct material licensing responsibilities.

9613(f)(1).[3]   Lockheed alleged that PADEP "is liable under CERCLA as an owner and operator of the Quehanna Facility, and as a person who arranged for and/or transported hazardous substances or waste that were disposed of . . . from the facility," and that "for decades beginning in the 1960's, [PADEP] participated in and made decisions about the use, handling, storage, and alleged disposal of" Strontium-90 at the Facility.

In addition to its counterclaim, Lockheed filed a third-party complaint, which named the Commonwealth, DCNR, and the United States as defendants and sought contribution pursuant to CERCLA and state law.[4]  *See* 42  U.S.C. § 9613(f)(1).  In the third party complaint, Lockheed repeated the allegations contained in its counterclaim against PADEP and argued that, if it is liable for cleanup costs under CERCLA, it is entitled to contribution from the Commonwealth and DCNR for their allocable share of any costs Lockheed must pay PADEP.  In other words, Lockheed asked for relief only if it was found liable; it did not seek an affirmative judgment against the Commonwealth or DCNR.

---

[3] Section 9613(f)(1) provides:

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under . . . section 9607(a) of this title. . . .  In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate

[4]  The United States is not a party to this appeal.

According to Lockheed, it filed the third-party complaint because it believed that Pennsylvania law required it to sue the Commonwealth and its agencies in their individual capacities. In response to Lockheed's third-party complaint, the Commonwealth and DCNR moved to dismiss, arguing that the complaint must be dismissed because, under the Eleventh Amendment of the U.S. Constitution, they are immune from suit. The District Court agreed and dismissed Lockheed's third-party complaint against the Commonwealth and DCNR. The court, however, left undisturbed Lockheed's recoupment defense and CERCLA contribution counterclaim against PADEP.

Lockheed then sought a supplemental ruling from the District Court, asking it to clarify whether the dismissal of its third-party complaint precluded it "from offsetting its liability based upon the conduct of all non-PADEP Commonwealth actors." In addition, Lockheed requested that the court certify the order for immediate appeal pursuant to Fed. R. Civ. P. 54(b).

The District Court responded that "[t]he scope of [Lockheed's] counterclaims against PADEP is limited to what is asserted by [Lockheed] in its counterclaims, specifically, that to the extent [Lockheed] is found liable for clean-up costs

PADEP is also liable for the same." The court also reiterated that the remaining issues were PADEP's claims against Lockheed, Lockheed's counterclaim against PADEP, and Lockheed's third-party claims against the United States. The court then certified its order, dismissing the third-party complaint against the Commonwealth and DCNR, as a final judgment pursuant to Rule 54(b).

Lockheed appealed because it believed the District Court's order precluded it from seeking contribution/recoupment from the Commonwealth and DCNR, and that the exclusion of these two entities would unfairly prejudice its defense. The basis for Lockheed's concern was the fact that PADEP and DCNR were created in 1995 when the Commonwealth split their predecessor agency, the Pennsylvania Department of Environmental Resources. Thus, PADEP did not exist at the time the facts underlying Lockheed's recoupment/contribution claims allegedly occurred. Therefore, Lockheed feared that, if it did not join the Commonwealth and PADEP to this litigation, its "defense will be materially and improperly impaired because PADEP may not qualify as a potentially responsible party under CERCLA, as it did not even exist as an entity when the materials in question were allegedly released at the facility."

## II. Discussion

Before we can reach the merits of the immunity issue, we must first determine whether the parties' briefing and statements during argument mooted this appeal. If the issues have become moot, *i.e.*, are no longer "live," the case will be moot and therefore nonjusticiable. *See Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 216 (3d Cir. 2003) ("If a case has become moot after the district court's entry of judgment, an appellate court no longer has jurisdiction to entertain the appeal") (citing *Mills v. Green,* 159 U.S. 651, 653 (1895)); *see also Rogin v. Bensalem Twp.,* 616 F.2d 680, 684 (3d Cir. 1980); *In re Surrick*, 338 F.3d 224, 229 (3d Cir. 2003). A case or controversy requires "(1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an

9

individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy with sufficiently adverse parties so as to sharpen the issues for judicial resolution." Id.

In the briefing and argument before us, it became increasingly clear that this appeal arose from a misunderstanding between the parties. In their brief, the Commonwealth and DCNR acknowledged that the Commonwealth was the real party in interest in PADEP's lawsuit and that Lockheed's third-party complaint was not necessary because Lockheed had already filed defensive counterclaims against the Commonwealth. With respect to Lockheed's claims against DCNR, the Commonwealth also admitted that Lockheed could raise defensive claims against DCNR by including those allegations in its counterclaim. In its reply brief, Lockheed viewed the Commonwealth's statements as a concession and opined that "[i]f the Commonwealth's brief means what it appears to say, there should be no real practical dispute remaining between the parties."

During argument, both the Commonwealth and Lockheed acknowledged that no dispute remained before the Court.

> MR. MURPHY:    . . . Lockheed Martin wants to be able to reduce its liability based on the activities of the other Commonwealth agencies and instrumentalities in response to the PA DEP suit. And if that happens we're fine.

The Court asked the Commonwealth:

THE COURT: [C]an Lockheed reduce its liability to the Commonwealth by the actions of other Pennsylvania entities that caused the environmental damage here?

MS. HUMMEL: . . . [Y]es, Lockheed can raise those defenses, raise those issues of liability to the extent the district court finds that in fact there is real liability associated with that, there is no immunity to liability of those claims, yes.

The court can consider that and reduce the judgment against Lockheed.

THE COURT: Is it your position that any recoupment claim that Lockheed Martin has against any state actor [and] the Commonwealth can be recouped through its counterclaim against DEP? . . .

THE COURT: Arising from this transaction, or this incident.

11

MS. HUMMEL: It can be raised, certainly.

* * *

THE COURT: [T]he question is if you waive by litigation sovereign immunity as to a Commonwealth entity, why don't you waive by litigation the sovereign immunity with respect to other Commonwealth entities that are involved with regard to this particular series of incidents?

MS. HUMMEL: In terms of the . . . district court's ability to hear that defense, to consider owner-operator - - I mean the issue here is owner-operator liability. The Commonwealth owned the site, Lockheed has asserted that the Commonwealth, other agencies operated the site. The district court's ability to consider those issues in, in the defensive mode, it can do that to offset what DEP is seeking to recover from Lockheed.

* * *

12

THE COURT: [C]an Lockheed reduce its liability to the Commonwealth by the actions of other Pennsylvania entities that caused the environmental damage here?

MS. HUMMEL: . . . [Y]es, Lockheed can raise those defenses, raise those issues of liability to the extent the district court finds that in fact there is real liability associated with that, there is no immunity to liability of those claims, yes. The court can consider that and reduce the judgment against Lockheed.

THE COURT: And that's across the board for Pennsylvania - -

MS. HUMMEL: Yes.

THE COURT: - - entities involved - -

MS. HUMMEL: Yes.

THE COURT: - - in what transpired at this site?

MS. HUMMEL: Yes.

Lockheed made similar responses to the court's questioning:

> THE COURT: . . . [I]sn't the counterclaim enough?  Aren't you covered? . . . You heard what she said here today, and if - - you could live with that, right?
>
> MR. MURPHY: I could . . ..

Based upon the Commonwealth's briefing and oral representations before the court, we conclude that it conceded that PADEP's potential recovery can be reduced in proportion to the liability attributable to the Commonwealth and DCNR. In other words, the Commonwealth now acknowledges that if Lockheed is liable for cleanup costs under CERCLA, Lockheed can recover contribution from the Commonwealth and DCNR for their allocable share of any costs Lockheed must pay PADEP.[5]  This concession moots the sovereign immunity issue because it removes the live legal controversy between the parties. *See Weiss v. Regal Collections*, 385 F.3d 337, 340 (3d Cir. 2004) ("An offer of complete relief will generally moot the plaintiff's claim, as at that point the plaintiff retains no personal interest in the outcome of the litigation"); *see also Rand v. Monsanto Co.,* 926 F.2d 596, 598 (7th Cir. 1991).

Lockheed repeatedly acknowledged that its primary concern was whether it could seek recoupment/contribution

---

[5]  Lockheed cannot, as it acknowledges, obtain an affirmative judgment from the Commonwealth or DCNR.

from the Commonwealth and DCNR and that it was of "no practice importance" whether it could offset its liability with a counterclaim or third party complaint. Since the parties now agree that Lockheed can obtain contribution from the Commonwealth and DCNR through Lockheed's counterclaim, Lockheed does not retain an interest in the outcome of the immunity issue. The District Court's order will, therefore, be vacated[6] and the case remanded to the District Court with instructions to dismiss the third party complaint against the Commonwealth and DCNR and for further proceedings.

## III. <u>Conclusion</u>

For the reasons stated above, we will vacate the order of June 30, 2010, of the District Court and remand this case for further proceedings consistent with this opinion.

---

[6] "The established practice . . . in dealing with a civil case . . . which has become moot while under review is to reverse or vacate the judgment below and remand with a direction to dismiss." *Rendell v. Rumsfeld*, 484 F.3d 236, 243 (3d Cir. 2007) (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950)).