Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/12/2019 09:06 AM CDT

State of Nebraska ex rel. Douglas J. Peterson,
Attorney General, and Scott Frakes, director
of the Nebraska Department of Correctional
Services, appellees, v. Senator Laura Ebke,
chairperson of the Judiciary Committee
of the Nebraska Legislature,
et al., appellants.

___ N.W.2d ___

Filed July 12, 2019.    No. S-18-795.

1. **Moot Question: Jurisdiction: Appeal and Error.** Because mootness is
   a justiciability doctrine that operates to prevent courts from exercising
   jurisdiction, appellate courts review mootness determinations under the
   same standard of review as other jurisdictional questions.
2. **Judgments: Jurisdiction: Appeal and Error.** A jurisdictional question
   that does not involve a factual dispute is determined by an appellate
   court as a matter of law, which requires the appellate court to reach a
   conclusion independent of the lower court's decision.
3. **Jurisdiction.** An actual case or controversy is necessary for the exercise
   of judicial power.
4. **Courts: Judgments.** In the absence of an actual case or controversy
   requiring judicial resolution, it is not the function of the courts to render
   a judgment that is merely advisory.
5. **Moot Question.** Mootness refers to events occurring after the filing
   of a suit which eradicate the requisite personal interest in the dispute's
   resolution that existed at the beginning of the litigation.
6. **Actions: Moot Question.** An action becomes moot when the issues
   initially presented in the proceedings no longer exist or the parties lack
   a legally cognizable interest in the outcome of the action.
7. **Moot Question: Words and Phrases.** A moot case is one which seeks
   to determine a question that no longer rests upon existing facts or
   rights—i.e., a case in which the issues presented are no longer alive.

8. **Moot Question.** The central question in a mootness analysis is whether changes in circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.

9. **Legislature: Contracts: Time.** The typical understanding of state legislative bodies is that, with the limited exception of valid contractual obligations with third parties, pending matters die at the expiration of the legislative body's 2-year term.

10. **Legislature.** Any current legislative body represents the people who elected it and should have power equal to its predecessor.

11. ____. The will of the past electorate should not control the future electorate and its representatives.

12. **Legislature: Time.** The authority of a legislature is limited to the period of its own existence.

13. **Public Purpose: Statutes.** An investigatory committee, being the mere agency of the body which appointed it, dies when the body itself dies, unless it is continued by law.

14. **Legislature: Time.** The general rule is that the period of legislative existence is its 2-year term, and committee investigations and attendant subpoenas automatically expire upon the expiration of that term.

15. **Legislature.** The Nebraska Unicameral Legislature, while unique because it is not a bicameral system, is not a continuing body.

16. **Constitutional Law: Legislature.** The Nebraska Constitution is not a grant, but, rather, is a restriction on the legislative power in light of the otherwise plenary power of the people of each state to do as they will.

17. **Legislature: Time.** Because the Nebraska Legislature is not a continuing body, a particular legislature's biennium period of existence ceases at the end its biennium term.

18. **Legislature: Time: Presumptions.** Like other pending matters, committee investigations and attendant subpoenas are presumed to cease to exist at the end of the term in which they commenced.

19. **Legislature: Statutes: Time.** There is no applicable statute or legislative rule providing for the continuing viability of pending subpoenas issued by an investigatory committee of a prior biennium term.

20. **Moot Question: Appeal and Error.** Under certain circumstances, an appellate court may entertain the issues presented by a moot case when the claims presented involve a matter of great public interest or when other rights or liabilities may be affected by the case's determination.

21. **Moot Question: Words and Phrases.** In determining whether the public interest exception should be invoked, the court considers the public or private nature of the question presented, the desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem.

Appeal from the District Court for Lancaster County: Lori A. Maret, Judge. Appeal and motion to substitute parties dismissed.

William M. Connolly and Patrick R. Guinan, of Erickson & Sederstrom, P.C., for appellants.

Douglas J. Peterson, Attorney General, Ryan S. Post, James D. Smith, and David A. Lopez for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Per Curiam.

## I. NATURE OF CASE

The underlying action in this case involves resistance to an investigatory subpoena issued during the 105th Legislature by the Judiciary Committee of the Nebraska Legislature, with the approval of the Executive Committee of the 105th Legislature. The subpoena commanded the attendance of the director of the Department of Correctional Services to testify at a scheduled committee hearing. Before the scheduled hearing, the State of Nebraska, represented by the Attorney General, and the director of the Department of Correctional Services (collectively the Department) sued the senators who were on the Judiciary Committee and the Executive Board of the Legislative Council at the time the subpoena was issued, as well as the Clerk of the Legislature who signed the subpoena (collectively the Senators). The Department alleged, among other things, that the Legislature as a whole did not vote to approve the investigation or the issuance of the subpoena; thus, the subpoena was not in the discharge of any duty imposed by the Legislative Council, by statute, or by a resolution of the Legislature, as described by Neb. Rev. Stat. § 50-401 (Reissue 2010). The Department filed an action to quash the subpoena pursuant to Neb. Rev. Stat. § 50-406 (Cum. Supp. 2018), and also sought, as to the Senators, declaratory judgment under the Uniform

Declaratory Judgments Act[1] and injunctive relief in relation to various aspects of the procedure leading up to and including the subpoena. Before the Senators filed an answer to the complaint, the court granted the Department's motion to quash the subpoena and denied the Senators' motion to dismiss. The Senators appeal from the court's order. The Department asserts that the appeal is moot because the subpoena was "issued by a committee of a Legislature which no longer exists."[2] We agree and hold that there is no longer a case and controversy as required for the exercise of our judicial power. A determination of the underlying merits of the dispute would be purely advisory.

## II. BACKGROUND

### 1. Internal Complaint
### Under § 84-907.10

On March 21, 2018, Senator Ernie Chambers filed a complaint under Neb. Rev. Stat. § 84-907.10(1) (Reissue 2014) with Senator Dan Watermeier, chairperson of the Executive Board of the Legislative Council of the 105th Legislature. Chambers' complaint questioned, among other things, whether the Nebraska Department of Correctional Services followed applicable state and federal laws in selecting the substances for execution by lethal injection and in allegedly withholding notices and public access to various documents, in violation of Neb. Rev. Stat. §§ 84-906.01 (Reissue 2014) and 84-907(2) (Cum. Supp. 2018). The complaint also alleged that the Department of Correctional Services' protocol violated the prohibition against cruel and unusual punishment found in the U.S. and Nebraska Constitutions, because the paralytic agent of the four-drug protocol served no valid purpose and would mask any signs of the condemned prisoner's distress, pain, or suffering during the execution.

---

[1] Neb. Rev. Stat. § 25-21,149 et seq. (Reissue 2016).

[2] Brief for appellees at 8.

### 2. Complaint Forwarded to Judiciary Committee

Watermeier referred the internal complaint to Senator Laura Ebke, as chairperson of the Judiciary Committee of the 105th Legislature, pursuant to § 84-907.10(2), which requires the chairperson or committee staff member of the Executive Board to refer the complaint to "the standing committee of the Legislature which has subject matter jurisdiction over the issue involved in the rule or regulation or which has traditionally handled the issue." Apparently, there was no objection, as provided for by rule 6, § 2(a), of the Rules of the 105th Nebraska Unicameral Legislature, Second Session (2018), that the matter had been referred to the wrong committee.

### 3. Public Hearing

The Judiciary Committee of the 105th Legislature apparently chose to forgo requesting a written response from the agency as described in § 84-907.10(3). Instead, on April 9, 2018, the Judiciary Committee elected, by majority vote, to conduct a public hearing pursuant to § 50-406 and rule 3, § 1, of the Rules of the 105th Nebraska Unicameral Legislature, and it sent a letter to the chairperson of the Executive Board so stating. The investigation sought to address concerns relating to the Department of Correctional Services' rules and regulations outlining the protocol for execution of the death penalty, codified at title 69, chapter 11, of the Nebraska Administrative Code. The concerns related to the process by which the protocol was adopted, its constitutionality, and whether it is consistent with the Legislature's intent when it passed 2009 Neb. Laws, L.B. 36. The hearing was scheduled for May 8.

Section 50-406 provides in full:

> In the discharge of any duty imposed by the Legislative Council, by statute, or by a resolution of the Legislature, the council, any committee thereof, and any standing or special committee created by statute or resolution of the Legislature may hold public hearings and may administer

oaths, issue subpoenas when the committee has received prior approval by a majority vote of the Executive Board of the Legislative Council to issue subpoenas in connection with the specific inquiry or investigation in question, compel the attendance of witnesses and the production of any papers, books, accounts, documents, and testimony, and cause the depositions of witnesses to be taken in the manner prescribed by law for taking depositions in civil actions in the district court. The council or the committee may require any state agency, political subdivision, or person to provide information relevant to the committee's work, and the state agency, political subdivision, or person shall provide the information requested within thirty days after the request except as provided for in a subpoena. The statute or resolution creating a committee may prescribe limitations on the authority granted by this section.

Litigation to compel or quash compliance with authority exercised pursuant to this section shall be advanced on the trial docket and heard and decided by the court as quickly as possible. Either party may appeal to the Court of Appeals within ten days after a decision is rendered.

The district court of Lancaster County has jurisdiction over all litigation arising under this section. In all such litigation the executive board shall provide for legal representation for the council or committee.

Section 50-401 creates the Legislative Council, "which shall consist of all of the members of the Legislature" and shall have as its function "to consider legislative policies between sessions of the Legislature and carry out the duties imposed by section 50-402." Neb. Rev. Stat. § 50-402(8) (Reissue 2010), in turn, provides that it shall be the duty of the Legislative Council to

set up subcommittees within the executive board to carry out functions such as investigation of any area which it may decide is in the public interest with power to employ

such additional personnel as may be needed to carry out the intent and activities of the executive board or the Legislature.

Rule 3, § 1, of the Rules of the 105th Nebraska Unicameral Legislature, in part, described committee investigatory hearings:

(a) Each committee of the Legislature is authorized to hold such hearings, to sit and act at such times and places during the sessions, recesses, and adjourned periods of the Legislature, to require by subpoena or otherwise the attendance of such witnesses and the production of such correspondence, books, papers, and documents, and to take such testimony, as it deems advisable. Each committee may make investigation into any matter within its jurisdiction, may report such hearings as may be had by it, and may present to the Legislature for its consideration any final reports and recommendations for action resulting from such investigations.

(b) A committee's subject-matter jurisdiction extends to all matters specified in the act creating the committee, or to all matters reasonably comprehended in the name of the committee. A committee's particular jurisdiction extends to any bill, resolution, or other measure referred to it by the Legislature, until final report of the measure has been made by the committee to the Legislature. A committee's particular jurisdiction shall also include review of the budgets of agencies, boards, and commissions reasonably encompassed in its subject-matter jurisdiction.

(c) No committee may exercise any of the above mentioned powers in a manner contrary to the Rules of the Legislature or in a manner which exceeds the scope of the act defining the purpose of the committee.

Rule 3, § 21, of the Rules of the 105th Nebraska Unicameral Legislature described the subpoena powers of committees in relation to such hearings:

It is within the inherent power of any legislative committee to gather information pursuant to its regular

functions, and to conduct investigations of matters within its subject-matter jurisdiction.

A committee's power of subpoena should not be exercised unless the committee has determined that no other method of securing the desired information would be successful or practicable, and that the matter is of primary importance to the welfare of the State of Nebraska.

A committee of the Legislature conducting an investigation and gathering information, whether pursuant to legislative direction or pursuant to its regular functions of oversight and bill preparation, shall observe the following procedures in addition to regular committee procedures whenever subpoenas are issued:

(A) Issuance of Subpoenas.

(i) A committee may, by a majority vote of all of its members taken at a meeting properly called, issue a subpoena requiring a person to appear before the committee and be examined in reference to any matter within the scope of the inquiry or investigation being conducted by the committee, but only when the committee has received prior approval by a majority vote of the Executive Board to issue subpoenas in connection with the specific inquiry or investigation in question.

. . . .

(iii) While the Legislature is in session, a committee deciding to issue subpoenas must promptly report each issuance to the Legislature. A record shall be made in the Journal reflecting the date the subpoena was issued, to whom it was issued, for what purpose it was issued, and the date on which testimony or production of documents is to take place. Under extraordinary circumstances, the identity of the person subpoenaed may be withheld from publication if necessary to protect the safety of an individual or the confidentiality of the matters to be heard.

(iv) A person subpoenaed to attend a hearing of a committee shall receive the same fees and allowances as a

person subpoenaed to give testimony in an action pending in a court of record.

(B) Notice to Witnesses.

. . . .

(ii) Any person who is served with a subpoena to attend a hearing of a committee shall also be served with a copy of the act defining the purpose of the committee, a copy of the rules under which the committee functions, a general statement informing him or her of the subject matter of the committee's investigation or inquiry, and a notice that he or she may be accompanied at the hearing by counsel of his or her own choosing.

. . . .

(G) Contempt.

. . . .

The chairperson of a committee may apply to the Legislature or, during the interim, to the district court of any county to compel obedience by proceedings for contempt.

(H) Penalties.

(i) A person guilty of contempt under the provision of these rules shall be subject to punishment pursuant to RRS 50-105 and 50-106 during the session, or to RRS 50-407 when the Legislature is not in session.

(ii) If a committee fails in any material respect to comply with the requirements of these rules, any person subject to a subpoena or a subpoena duces tecum who is injured by such failure shall be relieved of any requirement to attend the hearing for which the subpoena was issued or, if present, to testify or produce evidence therein; and such failure shall be a complete defense in any proceeding against such person for contempt or other punishment.

### 4. Decision to Issue Subpoena

On April 10, 2018, the Judiciary Committee formally invited Scott Frakes, director of the Department of Correctional

Services, to testify at the hearing. Frakes did not respond to the invitation. On April 18, Ebke asked the Executive Board to provide approval to the Judiciary Committee to issue a subpoena and possible subpoenas duces tecum to Frakes. While there was some discussion at the meeting of the Executive Board as to whether to give Frakes more time to respond to the invitation so that he could attend the hearing voluntarily, April 18 was the day of adjournment for the legislative session. A majority (by one vote) of the Executive Board voted to approve the Judiciary Committee's issuance of a subpoena.

#### (a) Subpoena

A subpoena was issued to Frakes on April 24, 2018. The subpoena states: "Pursuant to statutory section 50-406 R.R.S., the Judiciary Committee of the Nebraska Legislature hereby compels your presence to testify at 9:00 a.m. on Tuesday, May 8, 2018, in Room 1113 of the Nebraska State Capitol Building, 1445 K Street, Lincoln, NE 68508." The subpoena was signed by Ebke, as the chairperson of the Judiciary Committee of the Nebraska Legislature, and by the Clerk of the Nebraska Legislature.

#### (b) Informational Letter

On April 25, 2018, the Judiciary Committee sent Frakes an informational letter pursuant to rule 3, § 21(B)(ii), of the Rules of the 105th Nebraska Unicameral Legislature. The letter explained that a majority of the Judiciary Committee had voted to conduct a hearing related to concerns over the Department of Correctional Services' execution protocol and, after obtaining the approval of the Executive Board, a majority of the Legislative Council had voted to subpoena Frakes' testimony. The Judiciary Committee explained that after Frakes had ignored a series of attempts to contact him and make arrangements for his voluntary testimony, the committee had determined that there was no method other than a subpoena of securing his attendance at the hearing. The letter informed Frakes that he could be accompanied at the hearing

by counsel of his own choosing. It did not specify whether Frakes would receive any compensation in the form of fees and allowances for his time.

### 5. Complaint

On May 1, 2018, before the scheduled date of the hearing, the Department sued the Senators. The complaint generally set forth the facts already described and asserted that the district court had jurisdiction over the action under Neb. Rev. Stat. § 24-302 (Reissue 2016) and §§ 25-21,149 and 50-406.

In what was designated as its first cause of action, the Department focused on its conclusion that § 84-907.10 did not authorize the Judiciary Committee to hold hearings or issue subpoenas in relation to internal complaints thereunder. The Department requested a declaration that in issuing the subpoena, the Senators had violated § 50-406 and rule 3, § 1 or § 21, of the Rules of the 105th Nebraska Unicameral Legislature. The Department also asked the court to enjoin the Senators from future acts violating these provisions.

In its designated second cause of action, the Department focused on its allegation that the subpoena was not issued in the discharge of a duty imposed by the Legislative Council, by statute, or by a resolution of the Legislature, as required by § 50-406. According to the Department, all of these duties can be imposed only by a majority vote of the Legislative Council, which is the entire Legislature. Because no vote by the entire Legislature was held in relation to the hearing and subpoena at issue, the Department asserted that the hearing and subpoena were not in the discharge of any of the three duties specified by § 50-406. The Department again requested that the court declare that the Senators violated § 50-406 and enjoin the Senators from similar future acts violating § 50-406.

In its designated third cause of action, the Department focused on allegations that Watermeier had referred Chambers' internal complaint to the wrong committee, asserting that the Government, Military and Veterans Affairs Committee was the standing committee with "subject-matter jurisdiction"

over the issues involved in the internal complaint. Further, in its third cause of action, the Department highlighted its allegations that the Senators failed to follow rule 3, § 21(B)(ii), of the Rules of the 105th Nebraska Unicameral Legislature by failing to serve Frakes with a copy of the act defining the purpose of the Judiciary Committee and by not offering to pay him fees and allowances commensurate with those given to persons subpoenaed to give testimony in an action pending in a court. Finally, in its designated third cause of action, the Department asserted that the vote of the Judiciary Committee had not been "properly called." The Department asserted that in the process of issuing the subpoena, the Senators had thereby violated rule 3, § 21(A)(i) and (iv) and (B)(ii), of the Rules of the 105th Nebraska Unicameral Legislature. The Department asked for a declaration that the Senators "failed in all material respects to comply with the requirements of the Rules of the Nebraska Unicameral Legislature and accordingly, . . . Frakes is relieved of any requirement to attend the hearing for which the subpoena was issued pursuant to Rule 3, Section 21(H)(ii) of the Rules of the Nebraska Unicameral Legislature."

In its designated fourth cause of action, the Department asserted that the Senators' actions were not within the sphere of legitimate legislative activity and that by virtue of the subpoena, the Senators sought to exercise a power properly belonging to the judicial branch by determining a case and controversy regarding the Department's compliance with the Administrative Procedure Act, the constitutionality of the execution protocol, and any other conflicts between the execution protocol and state and federal laws and regulations. The Department requested a declaration that the Senators thereby violated the separation of powers provision in the Nebraska Constitution, Neb. Const. art. II, § 1, and asked that the court enjoin the Senators from future acts violating article II, § 1.

In its fifth and final designated cause of action, the Department requested that pursuant to § 50-406, the court

quash the subpoena, due to the alleged violations of Neb. Const. art. II, § 1; § 50-406; and rule 3, §§ 1 and 21, of the Rules of the 105th Nebraska Unicameral Legislature.

In its prayer for relief, in addition to the relief requested within its five causes of action, the Department asked for costs.

### 6. MOTION TO QUASH

The day after filing its complaint, the Department filed a motion to quash subpoena. The motion stated that the grounds for the motion had been set forth in the complaint and included, but were not limited to, the Senators' alleged violations when issuing the subpoena of §§ 50-406 and 84-907.10 and rule 3, §§ 1 and 21, of the Rules of the 105th Nebraska Unicameral Legislature. The motion also described that pursuant to § 50-406, the matter "'shall be advanced on the court docket and heard and decided by the court as quickly as possible.'"

### 7. ORDER STAYING SUBPOENA AND HEARING

Pursuant to a stipulation, on May 4, 2018, the court stayed the subpoena and the "subpoena's hearing date" until "such time as the Court finally resolves the issues raised in the Complaint."

### 8. MOTION TO DISMISS

On May 10, 2018, the Senators moved to dismiss the complaint pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(1), (4), (5), and (6), on the alternative grounds that (1) the named defendants were absolutely immune from litigation pursuant to the Neb. Const. art. III, § 26, the speech and debate clause; (2) the judiciary lacks the authority under separation of powers principles to declare the Judiciary Committee's actions unconstitutional, issue a permanent injunction against the Judiciary Committee or its members, quash the subpoena, or enter a money judgment against the Judiciary Committee or its members; (3) § 50-406 is overbroad and violates the speech and debate and separation of powers clauses to the extent it gives

courts the power to oversee legislative committees' authority to hold public hearings, make specific inquiry or investigation, compel the production of documents or testimony, and require a state agency to provide information relevant to the committee's work; (4) the Attorney General lacks standing to sue members of the Legislature, given the Attorney General's duty to defend the Legislature imposed by Neb. Rev. Stat. § 84-209 (Reissue 2014); and (5) service was improper because the Attorney General attempted to serve process on each of the individual defendants by sending the summonses by certified mail to the Attorney General's own offices.

### 9. Hearing on Motion to Dismiss and Motion to Quash

A hearing was held on the Senators' motion to dismiss and the Department's motion to quash. At the hearing, the Senators focused on legislative immunity, arguing that the analysis "starts and ends with" the fact that committee issuance of investigatory subpoenas is within the legitimate legislative sphere and thus the district court lacked jurisdiction to "pass judgment on the committee's processes and motives for issuing the subpoena." The Senators asserted that § 50-406 could not waive, through legislative enactment, a constitutionally protected immunity.

The Department responded that while it agreed the members of the Legislature would be immune from litigation stemming from a lawfully issued subpoena, this subpoena was not lawfully issued. The Department also asserted that the Senators could not rely on § 50-406 in issuing the subpoena while at the same time challenging as unconstitutional the language of § 50-406 purporting to grant the district court for Lancaster County jurisdiction over litigation to compel or quash compliance with authority exercised pursuant to § 50-406.

On the underlying merits of the motion to quash, the Senators argued that the investigatory subpoena was within its authority to review and consider whether adjustments are

necessary to its laws pertaining to the death penalty and delegating to the executive branch the development of the death penalty protocol. The Department argued that the subpoena at issue was not legislative and that the Senators failed to comply with the procedure set forth in § 84-907.10.

### 10. Order Denying Dismissal and Sustaining Motion to Quash

The court ruled on both the Senators' motion to dismiss and the Department's motion to quash in an order dated August 8, 2018.

The court overruled the Senators' motion to dismiss. The court's reasoning for this ruling was that the motion raised "several issues, including novel questions under Nebraska's Constitution[,] that our appellate courts have not yet addressed." Thus, the court "decline[d] to sustain the Motion [to dismiss]."

The court granted the Department's motion to quash. The court reasoned that while the subpoena may have satisfied the requirement that it receive prior approval by a majority vote of the Executive Board of the Legislative Council, the subpoena was not "'[i]n the discharge of any duty imposed by the Legislative Council, by statute, or by a resolution of the Legislature . . . .'" The court noted that the Legislative Council and the Executive Board are distinct decisionmaking bodies and that § 50-402 refers to the Legislative Council as having the duty of collecting information, while Neb. Rev. Stat. § 50-401.01 (Cum. Supp. 2018), describes the Executive Board's duties as administrative, such as hiring staff and contracting for professional services. The court did not specifically address rule 3, § 21, of the Rules of the 105th Nebraska Unicameral Legislature.

### 11. Notice of Appeal and Appellate Motions

On August 20, 2018, the Senators filed their notice of appeal. On January 9, 2019, the 106th Nebraska Legislature

commenced. Because the 105th Legislature sat in an even year, the end of the 105th Legislature was the end of a biennium. The new biennium commenced with the 106th Legislature in 2019. Several of the named senators are no longer in office. The Department filed a "Suggestion of Mootness" based on this change of circumstances.

## III. ASSIGNMENTS OF ERROR

The Senators assign that the lower court erred in (1) not finding that the Senators are absolutely immune from litigation under Nebraska's speech and debate clause; (2) not finding that § 50-406, on its face, violates the Nebraska Constitution's speech and debate and separation of powers clauses; (3) not finding that § 50-406, as applied to legislative subpoenas, violates the Nebraska Constitution's speech and debate and separation of powers clauses; (4) not finding that the Attorney General lacked standing or capacity to sue the Senators; (5) not dismissing the complaint; (6) finding that the Judiciary Committee was not discharging a duty imposed by the Legislative Council, by statute, or by resolution in the Legislature; (7) not finding that the Judiciary Committee had jurisdiction to investigate, hold hearings, and issue subpoenas independent of § 50-406; and (8) granting the Department's motion to quash.

## IV. STANDARD OF REVIEW

[1,2] Because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, we have reviewed mootness determinations under the same standard of review as other jurisdictional questions.[3] A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.[4]

[3] See *Al-Ameen v. Frakes*, 293 Neb. 248, 876 N.W.2d 635 (2016).

[4] *Id.*

## V. ANALYSIS

[3,4] Mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction.[5] An actual case or controversy is necessary for the exercise of judicial power.[6] In the absence of an actual case or controversy requiring judicial resolution, it is not the function of the courts to render a judgment that is merely advisory.[7] Therefore, as a general rule, a moot case is subject to summary dismissal.[8] It is well established that when a party or parties are aware that appellate issues have become moot during the pendency of the appeal and such mootness is not reflected in the record, in the interest of judicial economy, a party may file a suggestion of mootness in the Nebraska Supreme Court or Nebraska Court of Appeals as to the issue or issues claimed to be moot.[9]

[5-8] Mootness refers to events occurring after the filing of a suit which eradicate the requisite personal interest in the dispute's resolution that existed at the beginning of the litigation.[10] An action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action.[11] A moot case is one which seeks to determine a question that no longer rests upon existing facts or rights—i.e., a case in which the issues presented are no longer alive.[12] The central question in a mootness analysis is whether changes in circumstances

---

[5] *Applied Underwriters v. S.E.B. Servs. of New York*, 297 Neb. 246, 898 N.W.2d 366 (2017).

[6] *Weatherly v. Cochran*, 301 Neb. 426, 918 N.W.2d 868 (2018).

[7] *BryanLGH v. Nebraska Dept. of Health & Human Servs.*, 276 Neb. 596, 755 N.W.2d 807 (2008).

[8] *Id.*

[9] *Id.*

[10] *Nebuda v. Dodge Cty. Sch. Dist. 0062*, 290 Neb. 740, 861 N.W.2d 742 (2015).

[11] *Nesbitt v. Frakes*, 300 Neb. 1, 911 N.W.2d 598 (2018).

[12] *Id.*

that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.[13]

The change in circumstances that the Department argues renders this appeal moot is the commencement of the 106th Legislature. We agree. The underlying complaint challenged the subpoena that was issued by the 105th Legislature to attend a hearing to be conducted by the Judiciary Committee of the 105th Legislature. The 105th Legislature, sitting in 2018, was the last legislative year of a biennium term. The order that is the subject of this appeal, which quashed the subpoena as unlawfully issued and which refused to dismiss the Department's action on the ground of legislative immunity, was issued during that prior biennium term and before the commencement of the present biennium term. The hearing Frakes resisted attending was never held and, as we will explain, the investigation, hearing, and subpoena at issue automatically expired upon the completion of the legislative biennium in which the investigation took place. This eradicated the requisite personal interest in the dispute's resolution that existed at the beginning of the litigation.

[9-12] The typical understanding of state legislative bodies is that, with the limited exception of valid contractual obligations with third parties,[14] pending matters die at the expiration of the legislative body's 2-year term.[15] This understanding derives from policies dating back to British parliamentary function, which disfavored entrenchment and sought to avoid the "dead hand problem."[16] Any current legislative body represents the people who elected it and should have power equal to

---

[13] *Nebuda v. Dodge Cty. Sch. Dist. 0062, supra* note 10.

[14] See *State ex rel. Stenberg v. Moore*, 249 Neb. 589, 544 N.W.2d 344 (1996).

[15] See Aaron-Andrew P. Bruhl, *Burying the "Continuing Body" Theory of the Senate*, 95 Iowa L. Rev. 1401 (2010).

[16] *Id*. at 1428. See, *McGrain v. Daugherty*, 273 U.S. 135, 47 S. Ct. 319, 71 L. Ed. 580 (1927); Thomas Jefferson, A Manual of Parliamentary Practice for the Use of the Senate of the United States (1801).

its predecessor.[17] The will of the past electorate should not control the future electorate and its representatives.[18] Recognizing these principles, we held in *State ex rel. Stenberg v. Moore*[19] that a past legislature impermissibly bound future legislatures by passing a law declaring null and void certain future legislation in the event it failed to include specified estimates and appropriations. "'The authority of a legislature,'" we observed, "'is limited to the period of its own existence.'"[20] We held that the law in question violated Neb. Const. art. III, §§ 1, 13, and 14, because it attempted to restrict the constitutional power of a succeeding legislature to legislate.[21]

[13] An investigatory committee, "being the mere agency of the body which appointed it, dies when the body itself dies, unless it is continued by law."[22] In such circumstances, an outstanding subpoena to attend an investigatory hearing by the committee also dies. It is a pending matter that dies at the expiration of the legislative body's 2-year term. Thus, in *Eastland v. United States Servicemen's Fund*,[23] the U.S. Supreme Court indicated that an action to enjoin enforcement of the investigatory subpoena issued by the U.S. House of Representatives had automatically expired during the pendency of the litigation, due to the cessation of the legislative term in which an investigatory subpoena had been issued. In subsequent cases, the U.S. District Court for the District of Columbia has explicitly held that subpoenas issued by an investigatory committee of the House of Representatives

---

[17] See Bruhl, *supra* note 15.

[18] See *id.*

[19] *State ex rel. Stenberg v. Moore, supra* note 14.

[20] *Id*. at 594, 544 N.W.2d at 348, quoting *Frost v. State*, 172 N.W.2d 575 (Iowa 1969).

[21] *State ex rel. Stenberg v. Moore, supra* note 14.

[22] *Tipton v. Parker*, 71 Ark. 193, 196, 74 S.W. 298, 299 (1903).

[23] *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 95 S. Ct. 1813, 44 L. Ed. 2d 324 (1975).

during one term expire upon a new term, because the prior House of Representatives has at that point ceased to exist as a legal entity.[24] This, in turn, renders moot any litigation seeking to avoid or enforce compliance with the subpoena.[25] This is analogous to federal decisions holding that with the expiration of a grand jury, so too expires the ability of the court to enforce a grand jury subpoena, rendering moot challenges relating to the subpoena.[26]

The only state cases addressing the continued life of an investigatory committee focus on the power of a committee to act after adjournment sine die, as opposed to the end of a term, but those courts hold that committees have the authority to do so only when it is specifically conferred.[27] State courts have not had occasion to address whether investigatory subpoenas automatically expire between legislative terms. At least one state decision has, however, held that subpoenas issued by standing committees of municipal councils automatically expire by reason of new elections.[28]

[14] The general rule is that the period of legislative existence is its 2-year term, and committee investigations and attendant subpoenas automatically expire upon the expiration of that term. It is true that the U.S. Senate, as opposed to the House of Representatives, has been characterized as a "'continuing body.'"[29] This is by virtue of the fact that its

---

[24] See, *Committee on Judiciary v. Miers*, 542 F.3d 909 (D.C. Cir. 2008); *United States v. American Tel. & Tel. Co.*, 551 F.2d 384 (D.C. Cir. 1976).

[25] See *id.*

[26] See, *In re Grand Jury Proceedings*, 744 F.3d 211 (1st Cir. 2014); *Loubriel v. United States*, 9 F.2d 807 (2d Cir. 1926); *United States v. Collins*, 146 F. 553 (D. Or. 1906).

[27] See 1 Norman J. Singer and J.D. Shambie Singer, Sutherland Statutory Construction § 12:17 (7th ed. 2010). See, also, *Tipton v. Parker, supra* note 22; *Brown et al., Aplnts. v. Brancato et al.*, 321 Pa. 54, 184 A. 89 (1936).

[28] See *Balt. v. Comm. on Legislative Invest.*, 341 Md. 23, 668 A.2d 33 (1995).

[29] *McGrain v. Daugherty, supra* note 16, 273 U.S. at 181.

members are elected for 6 years and so divided into classes
that the seats of only one-third become vacant at the end of
each Congress, with two-thirds (or a quorum) always con-
tinuing into the next Congress, save as vacancies may occur
through death or resignation.[30] Further, the Senate, unlike the
House of Representatives, does not adopt new procedural rules
or readopt the old procedural rules upon each new term; the
old rules of the Senate remain in effect and are revised only
on rare occasion.[31] But even with such continuing existence, it
is not entirely clear that Senate investigatory subpoenas auto-
matically continue to be enforceable after the Senate's term
has ended, without reissuance or other affirmative acts by the
senators holding office in the new term.[32] It has been held that
even the Senate cannot exercise its inherent contempt powers
to enforce an investigatory subpoena after adjournment sine
die—let alone after expiration of its term.[33]

[15,16] In any event, no state legislative body has been
similarly described as a "continuing body." We hold that the
Nebraska Unicameral Legislature, while unique because it is
not a bicameral system, is likewise not a "continuing body."
The Nebraska Constitution is not a grant, but, rather, is a
restriction on the legislative power[34] in light of the otherwise
"plenary power of the people of each state to do as they will."[35]
The constitutional provisions restricting the power of the leg-
islature describe 2-year biennium terms that begin with odd-
numbered years and end with the following even-numbered

---

[30] See *id.*

[31] Bruhl, *supra* note 15.

[32] See, *Eastland v. United States Servicemen's Fund, supra* note 23; Bruhl,
*supra* note 15. See, also, *Marshall v. Gordon,* 243 U.S. 521, 37 S. Ct. 448,
61 L. Ed. 881 (1917); *United States v. Fort*, 443 F.2d 670 (D.C. Cir. 1970).
But see 28 U.S.C. § 1365 (2012).

[33] See *United States v. Fort, supra* note 32. But see 28 U.S.C. § 1365.

[34] *State ex rel. Stenberg v. Moore, supra* note 14.

[35] 16 Am. Jur. 2d *Constitutional Law* § 42 at 384 (2009).

year. Neb. Const. art. III, § 10, describes the length of legislative sessions in odd versus even-numbered years and states that only in an odd-numbered year may "[b]ills and resolutions under consideration by the Legislature upon adjournment . . . be considered at the next regular session, as if there had been no such adjournment." There is no analogous constitutional provision for the U.S. Senate. Furthermore, approximately one-half of the members of the Nebraska Unicameral Legislature are subject to staggered elections for their 4-year terms,[36] not the mere one-third of the U.S. Senate. And the existence of staggered elective terms, which seems to be the only basis for equating our Legislature to the U.S. Senate, is a relatively new phenomenon. In the bicameral era, members of the Legislature, including both the House of Representatives and the Senate, were elected for terms consisting of only 2 years.[37] At the inception of the unicameral era, the members of the new one-house Legislature were elected only for 2-year terms.[38] This continued, despite an intervening constitutional amendment,[39] until the voters adopted an amendment for staggered 4-year terms in 1962.[40] The parties have not pointed to, nor has our research disclosed, any legislative text or history from 1962 stating any intent to make the Nebraska Legislature a "continuing body."[41] Finally, unlike in the Senate, all procedural rules of the Nebraska Unicameral Legislature are adopted by a majority vote at the "commencement of each regular session in odd-numbered years," and the adopted rules "govern the Legislature for a period of two years."[42] This

---

[36] See, Neb. Const. art. III, § 7; Neb. Rev. Stat. § 32-508 (Reissue 2016).

[37] See, Neb. Const. art. II, § 4 (1875); Neb. Const. art. III, § 7 (1920).

[38] See Neb. Const. art. III, § 7 (1935).

[39] See *id.* (1961).

[40] See *id.* (1963).

[41] See 1961 Neb. Laws, ch. 247, § 1, p. 733.

[42] Rule 2, § 1(a), Nebraska Unicameral Legislature, 106th Leg., 1st Sess. 9 (2019). See, also, *id.*, 105th Leg., 2d Sess. 9 (2018).

demonstrates the Legislature's collective understanding that it is not a "continuing body," but, rather, is a new Legislature established at the regular legislative session commencing in each odd-numbered year. Obviously, that session would next follow the general election in each even-numbered year, at which a new term begins for approximately one-half of its members. The Legislature itself numbers its sessions consistent with that understanding.

[17,18] Because the Nebraska Legislature is not a "continuing body," a particular legislature's biennium period of existence ceases at the end its biennium term. Like other pending matters, committee investigations and attendant subpoenas are presumed to cease to exist at the end of the term in which they commenced. The committee investigation dies when the body dies, unless it is continued by a valid law.

[19] And there is no applicable statute or legislative rule providing for the continuing viability of pending subpoenas issued by an investigatory committee of a prior biennium term. We need not decide whether such a statute or rule, if it existed, would be an impermissible restriction on future legislatures, like the statute addressed in *State ex rel. Stenberg v. Moore*.[43] The applicable statutes and procedural rules of the 105th Legislature contemplated the expiration of investigatory committees at the end of each biennium term and, by necessary implication, the expiration of the expired committees' pending hearings and attendant subpoenas. Neb. Rev. Stat. § 50-410 (Reissue 2010), describes that the Legislative Council "shall meet at least once in each biennium." Rule 3, § 2(c), provided that the membership of all standing and select committees shall continue only during the duration of the biennium. Under this rule, new membership of committees was to be appointed at the beginning of each session beginning in odd-numbered years and continue only until the regular session in the next subsequent odd-numbered year.

---

[43] *State ex rel. Stenberg v. Moore, supra* note 14.

Similarly, at the commencement of each regular session in odd-numbered years, new members of the executive board were to be elected.[44]

While rule 3, § 1(b), described the power of committees to sit and act during session, recesses, and adjourned periods, and it stated that committees had "jurisdiction" "until final report," it did not purport to address a new biennium legislative term and the survivability of subpoenas beyond the commencement of the odd-numbered year during which the committee will be reconstituted with new members. Further, rule 3, § 1(c), explained that "[n]o committee may exercise any of the above mentioned powers in a manner contrary to the Rules of the Legislature or in a manner which exceeds the scope of the act defining the purpose of the committee."

Thus, the Judiciary Committee's investigation at issue in this appeal automatically expired with the expiration of the Legislature in which it had begun, and the subpoena that was the subject of the district court's order presently appealed from died with it. While it might be argued under different circumstances that a failure to appear, as subpoenaed, at a past legislature's investigatory hearing is a historical fact subjecting the witness to contempt even after a new legislature commences, that did not occur here. The scheduled hearing was never held. Because the subpoena has expired and the hearing was never held, no real controversy presently exists regarding the subpoena's enforceability against Frakes.

As the enforceability against Frakes was the only issue determined in the court's order quashing the subpoena pursuant to § 50-406, the court's order in that regard is moot. It follows that no real controversy presently exists concerning the Senators' immunity defenses to Frakes' challenges under § 50-406 to the subpoena's enforceability, and the district court's order denying the Senators' motion to dismiss Frakes'

---

[44] Rule 1, § 1.

challenges under § 50-406 are likewise moot.[45] We do not consider to be presently before us in this interlocutory appeal the court's ruling on the Senators' motion to dismiss as it pertained to other claims brought by the Department outside of § 50-406 and, thus, outside of a special proceeding.[46] Those claims appear to still be pending below, and the Department is free to voluntarily dismiss those claims or either party may request a ruling by the district court that the claims are moot.

[20,21] Under certain circumstances, an appellate court may entertain the issues presented by a moot case when the claims presented involve a matter of great public interest or when other rights or liabilities may be affected by the case's determination.[47] In determining whether the public interest exception should be invoked, the court considers the public or private nature of the question presented, the desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem.[48] While this case involves questions of a public nature, it is not at all clear that the same or a similar problem is likely to recur and, relatedly, that there is a need to provide future guidance for public officials. Indeed, in the event that the Judiciary Committee of the current or future bienniums were to similarly issue a similar subpoena, the statutes and rules governing the issuance, enforcement, and resistance to investigatory subpoenas may have changed. We will not issue an opinion on a hypothetical set of facts that are unlikely to recur.

---

[45] See, *Alabama v. North Carolina*, 560 U.S. 330, 130 S. Ct. 2295, 176 L. Ed. 2d 1070 (2010); *Pennsylvania v. Lockheed Martin Corp.*, 681 F.3d 503 (3d Cir. 2012).

[46] See, *Heckman v. Marchio*, 296 Neb. 458, 894 N.W.2d 296 (2017); *State v. Loyd*, 269 Neb. 762, 696 N.W.2d 860 (2005); Neb. Rev. Stat. §§ 25-1301 (Cum. Supp. 2018) and 25-1911 and 25-1902 (Reissue 2016).

[47] *Weatherly v. Cochran, supra* note 6.

[48] *Id.*

## VI. CONCLUSION

Because the Nebraska Legislature, like most state legislative entities, is not a continuing body, the subpoenas at issue expired at the commencement of the 106th Legislature. Even if we were to agree with the Senators' legal position, we could not grant the relief they seek. This prevents this court from reaching the substantive issues raised by the parties.

We therefore dismiss the appeal as moot. We also dismiss as moot the Department's appellate motion to substitute the named senators who are no longer in office with their successors in the 106th Nebraska Legislature, which motion the Department explained "should not be construed as conceding any issue pertaining to the continued justiciability of this case on mootness or any other basis." The Department is free to make such motion below if it wishes to still pursue any claims set forth in the complaint outside of § 50-406.

Appeal and motion to substitute
parties dismissed.

Miller-Lerman, J., concurring.

I concur in the per curiam decision, but write separately to address the timing of a future similar case, if any.

Among the features of Nebraska's unique Unicameral system is the fact that the Legislature reconstitutes itself every 2 years. The Nebraska Legislature is not a continuing body. As a result, the subpoena issued by the 105th Legislature ceased to be a demand of the Legislature and issues related to its issuance became moot.

This circumstance leaves unanswered the underlying substantive issues identified in the per curiam opinion including: whether the Nebraska Department of Correctional Services' rules and regulations outlining the protocol for execution of the death penalty, and the process by which the protocol was adopted, were constitutional and consistent with Nebraska statutes; whether delegation of development of the death penalty protocol to the executive branch would benefit from more

strict legislative boundaries; whether the department followed applicable state and federal law in selecting the substances for lethal injection; and whether notices and public access to various documents were consistent with Nebraska statutes.

The foregoing issues could be addressed by a similar subpoena issued by the 106th Legislature timed in a manner which would forestall mootness. Were the current or future Legislatures to act earlier in the biennium, a court challenge, if any, could mature and the Judiciary at all levels would be obligated to advance consideration of the case.