Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/08/2021 09:08 AM CST

Brian Chaney, appellant, v. Robert B.
Evnen, in his official capacity
as Nebraska Secretary of
State, et al., appellees.

___ N.W.2d ___

Filed October 16, 2020.    No. S-20-660.

1. **Motions to Dismiss: Pleadings: Appeal and Error.** An appellate court reviews a district court's order granting a motion to dismiss de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.

2. **Rules of the Supreme Court: Pleadings: Appeal and Error.** An appellate court reviews the district court's denial of a motion to amend under Neb. Ct. R. Pldg. § 6-1115(a) for an abuse of discretion. However, an appellate court reviews de novo any underlying legal conclusion that the proposed amendments would be futile.

3. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

4. **Moot Question: Jurisdiction: Appeal and Error.** Although mootness does not prevent appellate jurisdiction, it is a justiciability doctrine that can prevent courts from exercising jurisdiction.

5. **Moot Question.** Mootness refers to events occurring after the filing of a suit which eradicate the requisite personal interest in the dispute's resolution that existed at the beginning of the litigation.

6. **Actions: Moot Question.** An action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action.

7. **Moot Question: Words and Phrases.** A moot case is one which seeks to determine a question that no longer rests upon existing facts or rights—i.e., a case in which the issues presented are no longer alive.

8. **Moot Question.** The central question in a mootness analysis is whether changes in circumstances have forestalled any occasion for meaningful relief.

9. **Pleadings: Equity.** A prayer for general equitable relief is to be construed liberally and will often justify granting relief in addition to that contained in the specific prayer, provided it fairly conforms to the case made by the petition and the evidence.

10. ____: ____. The prayer for general relief in an equity action is as broad as the pleadings and the equitable powers of the court sufficient to authorize any judgment to which the party is entitled under the pleadings and the evidence.

11. **Motions to Dismiss: Pleadings.** To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts to state a claim to relief that is plausible on its face. In cases in which a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of the element and raise a reasonable expectation that discovery will reveal evidence of the element or claim.

12. **Motions to Dismiss: Pleadings: Appeal and Error.** When reviewing an order dismissing a complaint, an appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.

13. **Constitutional Law: Initiative and Referendum.** The right of initiative is precious to the people and is one which courts are zealous to preserve to the fullest tenable measure of spirit as well as letter.

14. **Pleadings: Words and Phrases.** Pleading facts with particularity means the who, what, when, where, and how: the first paragraph of any newspaper story.

Appeal from the District Court for Lancaster County: Robert R. Otte, Judge. Affirmed.

Scott A. Lautenbaugh, of Law Offices of Scott Lautenbaugh, for appellant.

Douglas J. Peterson, Attorney General, and Ryan S. Post for appellee.

Mark C. Laughlin and Daniel J. Gutman, of Fraser Stryker, P.C., L.L.O., for appellees Albert Davis III et al.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Per Curiam.

Brian Chaney filed a lawsuit in which he sought to prevent Nebraska voters from amending provisions of the Delayed Deposit Services Licensing Act, Neb. Rev. Stat §§ 45-901 to 45-931 (Reissue 2016 & Cum. Supp. 2018), through a ballot initiative measure. Chaney alleged that some individuals who signed the initiative petition wished to withdraw their signatures. He also asserted that certain petition circulators did not comply with a Nebraska statute and committed fraud during the petition process. The district court dismissed Chaney's lawsuit, and Chaney appeals. Finding no error in the district court's decision, we affirm.

## I. BACKGROUND

### 1. Initiative

This case concerns an initiative measure which, if adopted, would establish a statutory cap on the annual percentage rate that delayed deposit services licensees may charge. We recently decided another case involving this initiative petition. See *Thomas v. Peterson, ante* p. 89, ___ N.W.2d ___ (2020). In *Thomas*, we held that the ballot title prepared by the Nebraska Attorney General which referred to delayed deposit service licensees as "payday lenders" was not insufficient or unfair. See *id.* This case concerns the same initiative petition, but raises different legal arguments.

### 2. Chaney's Complaint

On August 31, 2020, Chaney filed a lawsuit naming Secretary of State Robert B. Evnen (the Secretary); Albert Davis III; Thomas A. Wagoner, Jr.; and Fr. Damian Zuerlein as defendants. Davis, Wagoner, and Zuerlein are the sponsors of the initiative petition at issue. Chaney identified the action as one to enjoin the Secretary from including the petition on the

November 3, 2020, general election ballot, pursuant to Neb. Rev. Stat. § 32-1412(2) (Cum. Supp. 2016).

In the complaint, Chaney alleged that in June 2020, the sponsors submitted signatures in support of the initiative petition to the Secretary. According to the complaint, each signature page included a sworn and notarized statement from the petition circulator asserting, among other things, that the circulator "'stated to each signer the object of the petition as printed on the petition before he or she affixed his or her signature to the petition.'" After those signatures were verified by county election officials, the Secretary certified on July 31, 2020, that all statutory requirements were met to place the initiative measure on the November 3 general election ballot.

Chaney's complaint did not contest the Secretary's determination that the sponsors submitted sufficient signatures from the requisite number of counties as required by article III, § 2, of the Nebraska Constitution. Rather, he asserted that 188 of the signatories wished to withdraw their signatures or that their signatures were otherwise invalid. Chaney alleged that when those individuals signed the petition, the petition circulators did not read the object of the petition to them. He also alleged that each of those individuals would not have signed the petition if the object had been read to them.

Chaney attached to his complaint 188 affidavits. The affidavits are substantially identical, with limited handwritten details relevant to each individual affiant including the county in which the affiant resided. Each affiant swore that the "circulator did not read to me the statement regarding the object of the petition that I now know was printed on the petition page" and that "I would not have signed the petition had the object statement been stated to me before the circulator asked for my signature."

Based on these allegations, Chaney asserted that the signatures were procured in violation of Neb. Rev. Stat. § 32-628 (Reissue 2016) and that the circulators committed fraud. He also alleged that the 188 affiants wished to withdraw their

signatures. The complaint claimed that without the signatures of the affiants, the petition was no longer supported by signatures from the requisite 5 percent of the registered voters in 38 counties.

In his prayer for relief, Chaney requested the "issuance of a temporary and permanent injunction enjoining the Secretary from placing the legally insufficient Petition on the November 3, 2020 general election ballot." He also prayed "[f]or such other further relief as the Court may deem just and equitable."

### 3. Motions Hearing

After the filing of the complaint, Chaney filed a motion for a temporary injunction. The sponsors filed a motion to dismiss for failure to state a claim upon which relief could be granted or, in the alternative, a motion for summary judgment. The sponsors also filed a motion to continue Chaney's motion for temporary injunction.

The district court held a hearing concerning the foregoing motions on September 8, 2020. At that hearing, counsel for Chaney, the Secretary, and the sponsors offered evidence and argument concerning the motions.

### 4. Dismissal Order

On September 9, 2020, the district court issued an order sustaining the sponsors' motion to dismiss and overruling Chaney's motion for temporary injunction. The district court held that Chaney's signature withdrawals were untimely and that he failed to allege fraud with particularity. In the course of concluding that Chaney had not adequately alleged fraud, the court reasoned that § 32-628(3) "does not require petition circulators to read the object statement 'verbatim to each person beforehand.' . . . Rather, 'it is sufficient that circulators summarize, generally, the object or purpose of the petition in a way that is not misleading.'"

In ordering dismissal, the district court further stated that Chaney "is not given leave to amend because the amendment

to his Complaint would not change the allegations in the affidavits attached therein."

## II. ASSIGNMENTS OF ERROR

Chaney assigns, condensed and restated, that the district court erred (1) by granting the motion to dismiss and (2) by not giving him the opportunity to amend his complaint.

## III. STANDARD OF REVIEW

[1] An appellate court reviews a district court's order granting a motion to dismiss de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. *Chafin v. Wisconsin Province of Society of Jesus*, 301 Neb. 94, 917 N.W.2d 821 (2018).

[2] An appellate court reviews the district court's denial of a motion to amend under Neb. Ct. R. Pldg. § 6-1115(a) for an abuse of discretion. However, we review de novo any underlying legal conclusion that the proposed amendments would be futile. *Kelly v. Saint Francis Med. Ctr.*, 295 Neb. 650, 889 N.W.2d 613 (2017).

[3] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *J.S. v. Grand Island Public Schools*, 297 Neb. 347, 899 N.W.2d 893 (2017).

## IV. ANALYSIS

### 1. Mootness

[4] The Secretary and sponsors contend that we should not reach the merits of this appeal because it is now moot. They argue that the specific relief Chaney sought in this case pursuant to § 32-1412(2)—an order enjoining the Secretary from certifying or printing the initiative petition on the ballot—is no longer available because the official ballot has been certified and copies of the ballot have been printed. Although mootness does not prevent appellate jurisdiction, it

is a justiciability doctrine that can prevent courts from exercising jurisdiction. *Nesbitt v. Frakes*, 300 Neb. 1, 911 N.W.2d 598 (2018). Accordingly, our analysis in this case begins not with Chaney's assignments of error, but with the question of whether this case is moot.

[5-8] Mootness refers to events occurring after the filing of a suit which eradicate the requisite personal interest in the dispute's resolution that existed at the beginning of the litigation. *State ex rel. Peterson v. Ebke*, 303 Neb. 637, 930 N.W.2d 551 (2019). An action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action. *Id.* A moot case is one which seeks to determine a question that no longer rests upon existing facts or rights—i.e., a case in which the issues presented are no longer alive. *Id.* The central question in a mootness analysis is whether changes in circumstances have forestalled any occasion for meaningful relief. See *id.*

[9,10] As noted, the Secretary and the sponsors contend this case is moot because the specific relief Chaney requested pursuant to § 32-1412(2) can no longer be ordered. But even if that relief cannot be granted, it is not the only relief Chaney requested. Chaney also requested "such other further relief as the Court may deem just and equitable." We understand this language to be a prayer for general equitable relief. Such a prayer is to be construed liberally and will often justify granting relief in addition to that contained in the specific prayer, provided it fairly conforms to the case made by the petition and the evidence. *Daugherty v. Ashton Feed and Grain Co., Inc.*, 208 Neb. 159, 303 N.W.2d 64 (1981). The prayer for general relief in an equity action is as broad as the pleadings and the equitable powers of the court sufficient to authorize any judgment to which the party is entitled under the pleadings and the evidence. *Sullivan v. General United Life Ins. Co.*, 209 Neb. 872, 312 N.W.2d 277 (1981). The relevant question in the mootness analysis in this case is thus whether any meaningful

relief could be provided in the event Chaney were to prevail. We believe the answer to this question is yes.

The Secretary decides disputed points of election law, but those decisions only retain the force of law until changed by the courts. See Neb. Rev. Stat. § 32-201 (Reissue 2016). This court has previously entertained requests for relief after the certification of a ballot initiative but before the election. See, *Stewart v. Advanced Gaming Tech.*, 272 Neb. 471, 723 N.W.2d 65 (2006); *State ex rel. Wieland v. Beermann*, 246 Neb. 808, 523 N.W.2d 518 (1994). See, also, Neb. Rev. Stat. §§ 32-801 (Reissue 2016) and 32-402.01 (Reissue 1993) (Secretary shall certify issues at least 50 days before general election). And in one such case, *State ex rel. Wieland v. Beermann, supra*, we provided relief. There, a citizen sought a writ of mandamus compelling the Secretary to remove proposed legislative resolutions from the general election ballot because the required explanatory statements had been filed after the statutory deadline. We granted the writ and then directed removal of the measures from the general election ballot just days before the election. It is safe to presume that at the time of our decision in *State ex rel. Wieland*, printing of the ballots had already begun.

Although the relief in *State ex rel. Wieland* arose out of our mandamus jurisdiction rather than our appellate jurisdiction, it suggests that we could direct the legal removal of the petition from the ballot even if we could not direct its physical removal. We see no reason why, if Chaney were entitled to prevail, we could not do the same here.

Based on our holding in *State ex rel. Wieland*, circumstances as they now stand have not forestalled any occasion for the meaningful relief requested by Chaney. Therefore, dismissal on mootness grounds is inappropriate.

## 2. Failure to State Claim

Turning now to the merits of Chaney's appeal, we begin with his various arguments concerning the district court's

dismissal of his complaint for failure to state a claim. On this topic, we note that although the parties submitted evidence at the hearing on the motion to dismiss, the district court did not convert the motion to dismiss to a motion for summary judgment or consider the evidence submitted by the parties. See Neb. Ct. R. Pldg. § 6-1112(b) (if, on motion to dismiss for failure to state claim, matters outside pleading are presented to and not excluded by court, motion shall be treated as one for summary judgment). Chaney, however, does not assign error to the district court's decision to decide the motion to dismiss on the pleadings alone, and all of the parties' arguments on appeal focus on whether Chaney's complaint stated a claim upon which relief could be granted, rather than whether he could withstand summary judgment. We thus confine our analysis to the issue of whether Chaney adequately stated a claim as well.

[11,12] In considering whether Chaney stated a claim, we apply well-known principles. To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts to state a claim to relief that is plausible on its face. *Schaeffer v. Frakes*, 306 Neb. 904, 947 N.W.2d 714 (2020). In cases in which a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of the element and raise a reasonable expectation that discovery will reveal evidence of the element or claim. *Id.* When reviewing an order dismissing a complaint, an appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion. *Holloway v. State*, 293 Neb. 12, 875 N.W.2d 435 (2016). For purposes of a motion to dismiss, a court is not obliged to accept as true a legal conclusion couched as a factual allegation, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*

As noted in the background section above, Chaney identified three different theories in his complaint why certain petition signatures should not be given effect. He claimed that signatories wished to withdraw their signatures, that circulators did not comply with § 32-628(3), and that circulators engaged in fraud. We will take up each of these theories, beginning with Chaney's claim that the individuals who signed affidavits attached to his complaint wished to withdraw their signatures.

(a) Signature Withdrawal

Although not mentioned in Chaney's complaint, a Nebraska statute, Neb. Rev. Stat. § 32-632 (Reissue 2016), allows petition signatories to withdraw their signatures by following certain steps. Section 32-632 provides:

Any person may remove his or her name from a petition by an affidavit signed and sworn to by such person before the election commissioner, the county clerk, or a notary public. The affidavit shall be presented to the Secretary of State, election commissioner, or county clerk prior to or on the day the petition is filed for verification with the election commissioner or county clerk.

Relying on this statute, the district court concluded that Chaney's signature withdrawals were untimely. It reasoned that Chaney had alleged that the Secretary certified the petition for the general election ballot on July 31, 2020, and that the deadline for removing signatures under § 32-632 was thus sometime before that date. None of Chaney's affidavits, however, were signed before August 20.

Section 32-632 allows petition signatories to withdraw their signatures and provides no indication that a signatory must provide any particular reason in order to effectuate the withdrawal of his or her signature. To the extent petition signatories wish to have their signature withdrawn simply because they no longer wish to support an initiative petition, we conclude that they must do so in compliance with § 32-632. If such signature

withdrawals could be effectuated outside of § 32-632, the restrictions of that section would have no force.

There is no indication that the 188 individuals who signed affidavits attached to Chaney's complaint complied with § 32-632. As the district court observed, those affidavits were signed weeks after the Secretary certified the petition for the ballot. In addition, Chaney's complaint also provides no indication that those ballots were presented to any of the officials specified by § 32-632. Accordingly, we find that the district court did not err to the extent it concluded that Chaney did not state a claim upon which relief could be granted merely by alleging that the individuals who signed affidavits attached to his complaint wished to withdraw their signatures.

In response to the district court's finding that the signature withdrawals were not timely, Chaney argues that the Secretary did not make the signed petitions available to him until after the petition had been certified for the ballot. He argues that the deadline to seek the court's involvement cannot be before the identities of petition signers are made available by the Secretary. While the availability of the identities of the petition signers may have made it close to impossible for Chaney to contact petition signers to inquire about whether they were interested in withdrawing their signature, there is nothing in our record that suggests *signatories* were precluded from seeking signature withdrawal in compliance with § 32-632. In short, Chaney argues that challengers to an initiative petition must have the opportunity to obtain the identities of petition signers and contact them before the time to withdraw their signatures expires. We view this as a policy argument properly directed to the Legislature.

At oral argument, counsel for the Secretary argued that § 32-632 is the sole means by which signatures can be withdrawn or declared invalid and thus that the signatures in support of this initiative petition are not open to challenge even if Chaney could show that circulators did not comply with § 32-628(3) or engaged in fraud. Chaney argues to the contrary.

We find, however, that we need not resolve the parties' competing positions on this issue, because, as we will explain, Chaney did not adequately allege that circulators failed to comply with § 32-628(3) or engaged in fraud.

### (b) Compliance With
### § 32-628(3)

Chaney also contends that circulators failed to comply with § 32-628(3). In support of this theory, Chaney alleged that petition circulators did not read the object statement of the petition to his supporting affiants. He argues petition circulators were required to do so by § 32-628(3). As we will explain, however, we disagree.

Section 32-628(3) requires that every sheet of a petition which contains signatures be accompanied by an affidavit from the circulator. The statute provides that the affidavit shall be in "substantially the following form" and goes on to list various items, including that the circulator "stated to each signer the object of the petition as printed on the petition before he or she affixed his or her signature to the petition." § 32-628(3).

Chaney argues that this language requires the circulator to read the object statement of the petition to the signatory verbatim. The Secretary and the sponsors counter that a verbatim reading is not required. While they concede that the circulator cannot say anything false or misleading, they argue this language allows the circulator to summarize the object statement.

In our view, both Chaney on the one hand and the Secretary and the sponsors on the other have made plausible arguments based on the statutory text. In the end, however, we side with the Secretary and the sponsors and conclude that a verbatim reading of the object statement is not required. In support of this conclusion, we note that the affidavit described in § 32-628(3) need not include the exact language of the statute but must only be in "*substantially* the following form." (Emphasis supplied.)

[13] While we find that the Secretary and the sponsors have the better textual argument, our reading of § 32-628(3) is largely informed by the fact that we are interpreting a statute pertaining to the exercise of the people's power of initiative. As we have often said, the right of initiative is precious to the people and is one which courts are zealous to preserve to the fullest tenable measure of spirit as well as letter. See, e.g., *Christensen v. Gale*, 301 Neb. 19, 917 N.W.2d 145 (2018). To that end, we have also emphasized that statutory provisions authorizing initiative petitions should be construed in such a manner that the legislative power reserved in the people is effectual and should not be circumscribed by restrictive legislation or narrow and strict interpretation of the statutes pertaining to its exercise. *Id.* We find those principles applicable here and conclude that requiring petition circulators to read the object statement of the petition to each signatory verbatim would be a narrow and strict interpretation of § 32-628(3) that could unduly restrict the power of initiative.

We find confirmation of our conclusion from a recent case in which we relied on the same principles to resolve a question of statutory interpretation related to the initiative and referendum process. In *Hargesheimer v. Gale*, 294 Neb. 123, 881 N.W.2d 589 (2016), the plaintiffs alleged that a referendum petition should be removed from the ballot because the statutorily required list of sponsors did not include Governor Pete Ricketts. The plaintiffs alleged that Governor Ricketts qualified as a sponsor because he contributed money to the referendum campaign and supported it publicly. We rejected this argument, holding that only those who agreed to assume responsibility for the initiative and referendum petition process qualified as sponsors.

In support of our conclusion, we noted that the argument urged by the plaintiffs would "tend to restrict the powers of initiative and referendum by making compliance with the statute more precarious." *Id.* at 134, 881 N.W.2d at 597-98. We reasoned that if we were to adopt plaintiffs' reading of

"'sponsoring the petition'" to include individuals who participated in or supported the petition process, we would "inject ambiguity and make adherence difficult" and "expose the petition process to procedural challenges and the risk of defects unrelated to the substance of the petition." *Id.* at 134, 881 N.W.2d at 598. Much like the reading urged by the plaintiffs in *Hargesheimer*, we believe that the reading advanced by Chaney would "mak[e] compliance with the statute more precarious" and "expose the petition process to procedural challenges and the risk of defects unrelated to the substance of the petition." See 294 Neb. at 134, 881 N.W.2d at 598.

Having concluded that petition circulators were not required to read the object statement of the petition to signatories, we find Chaney's claim for relief based on a violation of § 32-628(3) crumbles. The only way in which Chaney alleges that circulators did not comply with § 32-628(3) is by failing to read the object statement to signatories.

### (c) Fraud

[14] This leaves only Chaney's argument that petition signatures were subject to invalidation because circulators committed fraud and that he adequately alleged the details of such fraud. As we evaluate this theory, we must do so under a different pleading standard. Under our pleading rules, claims of fraud are subject to a heightened pleading standard. Our rules of pleading provide that "[i]n all averments of fraud, . . . the circumstances constituting fraud . . . shall be stated with particularity." Neb. Ct. R. Pldg. § 6-1109(b) (rev. 2008). Pleading facts with particularity means the who, what, when, where, and how: the first paragraph of any newspaper story. *Chafin v. Wisconsin Province Society of Jesus*, 301 Neb. 94, 917 N.W.2d 821 (2018). With this standard in mind, we take up Chaney's allegations of fraud.

The complaint did not make any factual allegations suggesting that circulators committed fraud on petition signatories, let alone plead such details with particularity. The complaint does

not allege, for example, any of the "who, what, when, where, and how" details concerning the provision of misleading information to signatories.

The only factual allegations that even approach the necessary level of particularity are Chaney's assertions that circulators defrauded the Secretary by asserting that "they stated to each signer the object of the petition as printed on the petition." But Chaney claims this was fraudulent solely because circulators did not read the object statement as printed on the petition. Chaney's fraud allegation thus collapses back into his argument that a circulator can only "'state[] to each signer the object of the petition as printed on the petition'" by reading that statement verbatim. We have concluded that is not the case and thus conclude that Chaney has not adequately alleged that circulators defrauded the Secretary.

Boiled to its essence, Chaney's complaint alleged only that certain petition circulators did not read the object statement of the petition to certain signatories and that signatories decided that they wished to withdraw their signatures. As we have explained, those allegations, even if true, do not establish that the circulators failed to comply with § 32-628(3) or that they committed fraud. And, to the extent that individual signatories simply decided that they wanted to withdraw their signatures, they could do so only through the means set forth by the Legislature, not via this lawsuit. Because Chaney's factual allegations, even if true, do not establish a right to the relief he seeks, the district court did not err in finding that the complaint failed to state a claim upon which relief could be granted.

### 3. Leave to Amend
### Not Required

Finally, Chaney claims that the district court erred in not allowing him the opportunity to amend his complaint. Chaney acknowledges, however, that he never asked that the district court grant him leave to amend his complaint. The Secretary

and the sponsors argue that the district court could not abuse its discretion by declining to grant leave to amend when it was not asked to do so.

A number of federal circuit courts have concluded that a trial court cannot abuse its discretion by denying leave to amend when it was not requested. See, e.g., *U.S. ex rel. Shara Ambrosecchia v. Paddock Labs.*, 855 F.3d 949 (8th Cir. 2017); *Fletcher-Harlee v. Pote Concrete Contractors*, 482 F.3d 247 (3d Cir. 2007); *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037 (6th Cir. 1991); *Coates v. Illinois State Bd. of Ed.*, 559 F.2d 445 (7th Cir. 1977). We, however, do not appear to have ever specifically adopted that rule. And, we have said that "[a]s a general rule, when a court grants a motion to dismiss for failure to state a claim, a party should be given leave to amend absent undue delay, bad faith, unfair prejudice or futility." *Eadie v. Leise Properties*, 300 Neb. 141, 150, 912 N.W.2d 715, 722 (2018).

But even if we have left open the possibility that a trial court could abuse its discretion by dismissing a complaint without allowing for amendment in the absence of a request for leave to amend, it remains true that, as a practical matter, it will be more difficult for a plaintiff to show that the district court has abused its discretion by doing so. Without such a request, the trial and appellate courts will likely be left to guess at what amendments plaintiff might seek to make and thus have no way to know whether the problems with the dismissed complaint can be cured.

*Hargesheimer v. Gale*, 294 Neb. 123, 881 N.W.2d 589 (2016), illustrates the difficulty of showing that a district court erred by not allowing leave to amend when the plaintiffs made no request to do so. In that case, the plaintiffs argued that the district court should not have dismissed their complaint with prejudice, but granted them leave to amend. We noted, however, that they did not make a request to amend the complaint and that they did not show how an amendment could cure the problems with the dismissed complaint.

Like the plaintiffs in *Hargesheimer*, Chaney has not shown how an amendment could have cured his failure to state a claim upon which relief could be granted. Chaney pled that 188 petition signatories wished to withdraw their signatures because they were procured by fraud and that the object statements were not read to signatories. However, we have concluded that the withdrawals were untimely submitted and that Chaney's allegations of fraud, even if they could render the withdrawals timely, were based on an incorrect understanding and application of § 36-328(3). Upon our review of the record, we conclude that Chaney has made no showing how amendment could have cured these defects.

Because Chaney neither moved for leave to amend nor showed how the defects in his complaint could have been cured, the district court did not err by declining to grant him leave to amend.

## V. CONCLUSION

For the reasons we have explained, the district court did not err by dismissing Chaney's complaint or by not providing him with the opportunity to amend his complaint. Accordingly, we affirm.

AFFIRMED.