Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/12/2024 09:09 AM CDT

City of Hastings, Nebraska, a municipal
corporation, appellee, v. Norman
Sheets et al., appellants.

___ N.W.3d ___

Filed July 12, 2024.    No. S-23-597.

1. **Moot Question: Judgments: Appeal and Error.** A mootness determination that does not involve a factual dispute is determined by an appellate court as a matter of law, which an appellate court determines independent of the lower court's decision.
2. **Moot Question.** Mootness refers to events occurring after the filing of a suit that eradicate the requisite personal interest in the dispute's resolution that existed at the beginning of the litigation.
3. **Actions: Moot Question.** An action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action.
4. **Moot Question: Words and Phrases.** A moot case is one that seeks to determine a question that no longer rests upon existing facts or rights—i.e., a case in which the issues presented are no longer alive.
5. **Moot Question.** The central question in a mootness analysis is whether changes in circumstances have forestalled any occasion for meaningful relief.
6. ____. A moot case is subject to dismissal.
7. **Declaratory Judgments.** The purpose of a declaratory judgment action is to declare rights, status, and other legal relations.
8. **Declaratory Judgments: Justiciable Issues.** The existence of a justiciable issue is a fundamental requirement for a court's exercise of its discretion to grant declaratory relief.
9. **Justiciable Issues.** A justiciable issue requires a present, substantial controversy between parties having adverse legal interests susceptible to immediate resolution and capable of present judicial enforcement.
10. **Declaratory Judgments.** The appropriateness of a declaratory judgment is ascertained by the precise relief sought.

11. **Moot Question: Public Officers and Employees.** The public interest exception to the mootness doctrine requires the consideration of (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for the guidance of public officials, and (3) the likelihood of recurrence of the same or a similar problem.

Appeal from the District Court for Adams County, MORGAN R. FARQUHAR, Judge. Affirmed in part, and in part reversed and remanded with directions to dismiss.

Bradley D. Holbrook and Coy T. Clark, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellants.

Jesse M. Oswald, Hastings City Attorney, for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

HEAVICAN, C.J.

## INTRODUCTION

After the appellants, who we collectively refer to as the "chief petitioners," submitted a signed referendum petition to repeal a measure of the city council approving the demolition of a viaduct, the City of Hastings (City) brought a declaratory judgment action under Neb. Rev. Stat. § 18-2538 (Reissue 2022) of the Municipal Initiative and Referendum Act[1] seeking a declaration that the City was not required to hold a special referendum election.

The principal issue presented in this appeal is whether the City is "required to proceed to hold" a special referendum election to repeal the city council's measure approving the viaduct's demolition when the viaduct was demolished during the pendency of the action.[2] Because this issue is dispositive

---

[1] Neb. Rev. Stat. §§ 18-2501 to 18-2538 (Reissue 2022).

[2] § 18-2538.

of this appeal, we do not consider the chief petitioners' other assignments of error. Ultimately, we conclude that in this case, as the district court held, the City does not need to proceed to hold a special election.

## BACKGROUND

We begin by recounting the factual and procedural background relevant to the resolution of this appeal.

### FIRST REFERENDUM PETITION

In May 2019, the City closed a viaduct commonly referred to as the "Old Highway 281 Viaduct." In December, the city council passed a resolution approving a plan to "[t]ear [d]own" the viaduct.

In response, the chief petitioners filed a prospective petition[3] with the city clerk[4] in January 2020. The prospective petition called for a referendum at the next regularly scheduled election "to reverse the city council[']s decision" to demolish the viaduct. The city clerk found the prospective petition to be in proper form and authorized the circulation of the petition.[5] After circulating the referendum petition[6] and receiving the requisite number of signatures,[7] the chief

---

[3] See § 18-2509 ("[p]rospective petition shall mean a sample document containing the information necessary for a completed petition . . . which has not yet been authorized for circulation").

[4] See § 18-2512 ("[b]efore circulating an initiative or referendum petition, the petitioner shall file with the city clerk a prospective petition").

[5] See *id*. ("[t]he city clerk shall verify that the prospective petition is in proper form and shall provide a ballot title for the initiative or referendum proposal, pursuant to [§] 18-2513"). See, also, § 18-2514 ("[s]ubstantial compliance with initiative and referendum forms is required before authorization to circulate such petition shall be granted by the city clerk pursuant to [§] 18-2512").

[6] See § 18-2508 ("[p]etition shall mean a document authorized for circulation pursuant to [§] 18-2512, or any copy of such document").

[7] See § 18-2529 ("at least [15] percent of the qualified electors").

petitioners filed the signed petition with the city clerk for signature verification[8] in March 2020.[9]

In response, the city council passed a resolution rescinding the resolution approving the demolition of the viaduct to "avoid the necessity of verifying the signatures on the Referendum Petition" in order to "provide the opportunity for the City to determine the best way forward."[10]

In August 2020, the city council approved a resolution for a proposition to be submitted to voters at the November 2020 general election.[11] The proposition sought the voters' authorization to issue $12.5 million in negotiable bonds to rebuild the viaduct. The proposition failed to pass at the general election.

Second Referendum Petition

On November 9, 2020, the city council approved resolution No. 2020-62, the subject of this appeal. That resolution called for the demolition of the viaduct and directed city staff "to proceed to take the necessary steps to carry out the demolition . . . as expeditiously as possible."

On December 13, 2021, the chief petitioners filed a prospective petition[12] calling for a special election for a referendum "to reverse the city council's decision to demolish" the viaduct. At a city council meeting that night, the council entered into an agreement with a contractor for the demolition

---

[8] See § 18-2518(1) ("[s]igned petitions shall be filed with the city clerk for signature verification").

[9] See § 18-2518(2) ("within [6] months from the date the prospective petition was authorized for circulation").

[10] See § 18-2529 ("[w]henever a referendum petition bearing [the requisite number of signatures] has been filed . . . it shall be the duty of the governing body of the municipality to reconsider the measure or portion of such measure which is the object of the referendum").

[11] See, generally, Neb. Rev. Stat. §§ 18-617 to 18-636 (Reissue 2022).

[12] See § 18-2509 ("[p]rospective petition shall mean a sample document containing the information necessary for a completed petition . . . which has not yet been authorized for circulation").

of the viaduct. Three days later, the city clerk found the chief petitioners' prospective petition to be in proper form and authorized the circulation of the petition.[13]

After circulating the referendum petition[14] and receiving the requisite number of signatures,[15] the chief petitioners filed the signed petition with the city clerk for signature verification[16] on February 17, 2022.[17] On March 1, the city council adopted a resolution that the county clerk ascertain whether the petition was signed by the requisite number of voters.[18] The next day, the City brought an action under § 18-2538 for a declaratory judgment for purposes of determining whether the measure was subject to referendum.[19]

---

[13] See § 18-2512 ("[t]he city clerk shall verify that the prospective petition is in proper form and shall provide a ballot title for the initiative or referendum proposal, pursuant to [§] 18-2513"). See, also, § 18-2514 ("[s]ubstantial compliance with initiative and referendum forms is required before authorization to circulate such petition shall be granted by the city clerk pursuant to [§] 18-2512").

[14] See § 18-2508 ("[p]etition shall mean a document authorized for circulation pursuant to [§] 18-2512, or any copy of such document").

[15] See § 18-2530 ("at least [20] percent of the qualified voters of a municipality [when a] petition requests that a special election be called").

[16] See § 18-2518(1) ("[s]igned petitions shall be filed with the city clerk for signature verification").

[17] See § 18-2518(2) ("within [6] months from the date the prospective petition was authorized for circulation").

[18] See § 18-2518(1) ("[u]pon the filing of a petition, a municipality, upon passage of a resolution by the governing body of such municipality, and the county clerk or election commissioner of the county in which such municipality is located may by mutual agreement provide that the county clerk or election commissioner shall ascertain whether the petition is signed by the requisite number of voters").

[19] See § 18-2538 ("[t]he municipality or any chief petitioner may seek a declaratory judgment regarding any questions arising under the Municipal Initiative and Referendum Act . . . . If the municipality does file such an action prior to receiving notification pursuant to [§] 18-2518, it shall not be required to proceed to hold such election until a final decision has been rendered in the action").

§ 18-2538 Declaratory Judgment Action

The City's petition asserted that a declaratory judgment should be entered declaring that "the referendum should not be placed on a special election ballot because it exceeds the scope of the people's referendum power" under the Municipal Initiative and Referendum Act. The City alleged that the referendum petition was in violation of § 18-2519, which prohibits subsequent attempts to repeal a measure, and that the measure was not subject to referendum under § 18-2528(1). In addition to filing an answer, the chief petitioners counterclaimed for a declaratory judgment declaring that the referendum petition was "proper" under the Municipal Initiative and Referendum Act.

With the demolition of the viaduct scheduled to begin on April 4, 2022, the chief petitioners moved for a temporary injunction to enjoin the City from demolishing the viaduct. In an affidavit in support of the temporary injunction, they asserted that "the subject matter of the [referendum petition] will likely be rendered moot" and that if the viaduct's demolition was "permitted to commence, judgment in the chief petitioners['] favor . . . would likely be rendered ineffectual." After a hearing, the district court denied the chief petitioners' request for a temporary injunction.[20] The viaduct was subsequently demolished.[21]

Thereafter, the City's § 18-2538 declaratory judgment action came before the district court on a stipulated trial with

[20] But, see, *State v. Jenkins*, 303 Neb. 676, 931 N.W.2d 851 (2019); *State ex rel. Boyer v. Grady*, 201 Neb. 360, 269 N.W.2d 73 (1978); *Barkley v. Pool*, 102 Neb. 799, 169 N.W. 730 (1918).

[21] See § 18-2538 ("[t]he municipality, city clerk, governing body, or any other officers of the municipality shall be entitled to rely on any order rendered by the court in any such proceeding").

simultaneous briefing.[22] Relevant here is the City's argument that because demolition of the viaduct had been completed, "any issue related to keeping or tearing down the [v]iaduct has become moot." In its judgment, styled as an order, the district court concluded that if the referendum petition were to move forward, it "would seek to effectuate the prevention of demolition of a structure that is already gone," causing the entry of a declaratory judgment to "only be advisory," and, therefore, the "matter [was] moot."

The district court went on to determine that the public interest exception applied to the case and proceeded to address other arguments raised by the City. Ultimately, the court "sustained" the City's request for declaratory judgment and declared that "no election or ballot submission shall be made."

The chief petitioners filed a timely appeal and petitioned to bypass review by the Nebraska Court of Appeals.[23] We granted their petition to bypass in order to address the power of referendum under the Municipal Initiative and Referendum Act in light of the unique circumstances of this case.

## ASSIGNMENT OF ERROR

Because our conclusion on the issue is dispositive of this appeal, we only consider the chief petitioners' assignment that the district court erred in finding that the declaratory judgment action was moot.

## STANDARD OF REVIEW

[1] A mootness determination that does not involve a factual dispute is determined by an appellate court as a matter of

---

[22] See *id*. ("[a]ny action brought for declaratory judgment pursuant to this section shall be given priority in scheduling hearings and in disposition as determined by the court. When an action is brought to determine whether the measure is subject to limited referendum or referendum . . . a decision shall be rendered by the court no later than [5] days prior to the election").

[23] See, Neb. Rev. Stat. § 24-1106(2) (Cum. Supp. 2022); Neb. Ct. R. App. P. § 2-102(B) (rev. 2022).

law, which an appellate court determines independent of the lower court's decision.[24]

## ANALYSIS

The specific circumstances underlying this appeal are unique and constrain our review. This is an appeal from the district court's judgment on the City's § 18-2538 declaratory judgment action. The chief petitioners have not brought a legal challenge to the city council's decision to demolish the viaduct.[25] Nor is this case before us on a purported appeal from the district court's denial of a temporary injunction to prevent the viaduct's demolition.[26] Those issues are not before us, and we do not consider them in resolving this appeal.

The only issue before us is whether, under the Municipal Initiative and Referendum Act, the chief petitioners' signed referendum petition filed with the city clerk requires the City to proceed to hold a special election to repeal resolution No. 2020-62, even though the viaduct has since been demolished.

On appeal, the chief petitioners argue that the City's declaratory judgment action is not moot because the sole question raised in the action—whether the City must proceed to hold an election—remains at issue, notwithstanding the demolition of the viaduct.[27] They contend that the viaduct's demolition is a collateral issue and has no bearing on whether an election

---

[24] See, *NP Dodge Mgmt. Co. v. Holcomb*, 314 Neb. 748, 993 N.W.2d 105 (2023); *Weatherly v. Cochran*, 301 Neb. 426, 918 N.W.2d 868 (2018); *Al-Ameen v. Frakes*, 293 Neb. 248, 876 N.W.2d 635 (2016).

[25] See *Smith v. City of Papillion*, 270 Neb. 607, 705 N.W.2d 584 (2005). See, also, §§ 18-617 to 18-636.

[26] See Neb. Rev. Stat. §§ 25-1062 to 25-1080 (Reissue 2016) and 25-1902 (Cum. Supp. 2022). See, generally, *Ramaekers v. Creighton University*, 312 Neb. 248, 978 N.W.2d 298 (2022); *Waite v. City of Omaha*, 263 Neb. 589, 641 N.W.2d 351 (2002); *Bartram v. Sherman*, 46 Neb. 713, 65 N.W. 789 (1896); *Scofield v. The State National Bank of Lincoln*, 8 Neb. 16 (1878).

[27] See *Pony Lake Sch. Dist. v. State Committee for Reorg.*, 271 Neb. 173, 710 N.W.2d 609 (2006).

to repeal resolution No. 2020-62 should be held. The chief petitioners assert that because resolution No. 2020-62 has not been repealed, it is still law and subject to referendum by the people.

The City maintains that the "matter" is moot because if an election was held on the referendum petition and the referendum passed, "it would result in rescinding a measure which[,] if repealed[,] would have zero effect."[28] It argues that "proceeding forward with an election would only seek to effectuate the prevention of the demolition of a structure that is already gone. There is nothing to be gained by an election. No referendum petition or public election can bring the old viaduct back."[29] We agree.

## MOOTNESS

[2-6] Mootness refers to events occurring after the filing of a suit that eradicate the requisite personal interest in the dispute's resolution that existed at the beginning of the litigation.[30] An action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action.[31] A moot case is one that seeks to determine a question that no longer rests upon existing facts or rights—i.e., a case in which the issues presented are no longer alive.[32] The central question in a mootness analysis is whether changes in circumstances have forestalled any occasion for meaningful relief.[33] A moot case is subject to dismissal.[34]

---

[28] Brief for appellee at 13. See *State ex rel. Brant v. Beermann*, 217 Neb. 632, 350 N.W.2d 18 (1984).

[29] Brief for appellee at 14.

[30] See *Chaney v. Evnen*, 307 Neb. 512, 949 N.W.2d 761 (2020).

[31] *Id*.

[32] See *id*.

[33] *Id*.

[34] See *State ex rel. Peterson v. Ebke*, 303 Neb. 637, 930 N.W.2d 551 (2019).

[7-10] The purpose of a declaratory judgment action is "to declare rights, status, and other legal relations."[35] The existence of a justiciable issue is a fundamental requirement for a court's exercise of its discretion to grant declaratory relief.[36] A justiciable issue requires a present, substantial controversy between parties having adverse legal interests susceptible to immediate resolution and capable of present judicial enforcement.[37] The appropriateness of a declaratory judgment is ascertained by the precise relief sought.[38]

Here, the City filed a declaratory judgment action under § 18-2538 requesting a judgment declaring that the chief petitioners' referendum petition sought a referendum in excess of "the scope of the people's referendum power" granted by the Municipal Initiative and Referendum Act. In response, the chief petitioners denied the City's allegations and resisted its request for relief. Not stopping there, the chief petitioners also filed a counterclaim for a judgment declaring that the referendum petition was "proper" under the Municipal Initiative and Referendum Act. The precise relief sought by the parties was merely the opposite conclusion on the same issue: whether the chief petitioners' referendum petition requires the City to proceed to hold a special election to subject resolution No. 2020-62 to referendum by the people. But while this action was pending before the district court, the viaduct, which was approved for demolition by resolution No. 2020-62, was demolished.

The City filed this action to ascertain whether it was required to hold a special referendum election to put its decision to demolish the viaduct before the voters or if it could proceed to demolish the viaduct without such an election. The chief petitioners' counterclaim seeks a determination as to

---

[35] Neb. Rev. Stat. § 25-21,149 (Reissue 2016).

[36] *McKay v. Bartels*, 316 Neb. 235, 3 N.W.3d 920 (2024).

[37] *Id.*

[38] *Id.*

whether the City is required to call a special referendum election on resolution No. 2020-62 to give the voters an opportunity to preserve the viaduct. We conclude that the parties' legal interests at the beginning of the litigation were eradicated with the demolition of the viaduct.

Now that the viaduct has been demolished, the City no longer has a *legal interest* in effectuating the viaduct's demolition. Likewise, the chief petitioners no longer have a *legal interest* in preserving the viaduct now that the viaduct no longer exists. Consequently, the issue initially presented in the proceeding no longer exists. The demolition of the viaduct has forestalled any occasion for meaningful relief. This case is moot and must be dismissed.

## PUBLIC INTEREST EXCEPTION

[11] As a general rule, a moot case is subject to summary dismissal.[39] However, even though this case is moot, the chief petitioners insist that the public interest exception applies. Nebraska recognizes a public interest exception to the mootness doctrine, and we consider whether it is applicable in this case.[40] The public interest exception to the mootness doctrine requires the consideration of (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for the guidance of public officials, and (3) the likelihood of recurrence of the same or a similar problem.[41]

We recognize that the particular set of facts concerning initiative and referendum petitions are often greatly dissimilar. Additionally, the specific circumstances of this case create a difficult, if not troublesome, situation to provide an authoritative adjudication to guide public officials in the future.

---

[39] *State ex rel. Peterson v. Ebke, supra* note 34.

[40] See, *Krajicek v. Gale*, 267 Neb. 623, 677 N.W.2d 488 (2004); *Rath v. City of Sutton*, 267 Neb. 265, 673 N.W.2d 869 (2004).

[41] See, *NP Dodge Mgmt. Co. v. Holcomb, supra* note 24; *Rath v. City of Sutton, supra* note 40.

Likewise, we cannot conclude that the same or similar problems presented by this appeal are likely to recur. It follows that the public interest exception does not apply in this case.

## CONCLUSION

Due to the demolition of the viaduct while this action was pending before the trial court, this action was rendered moot as the district court determined. But for that reason, the case must be dismissed. Consequently, we affirm in part, and in part reverse the judgment of the district court and remand the matter with directions to dismiss the action.

Affirmed in part, and in part reversed and
remanded with directions to dismiss.