Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/06/2026 08:08 AM CST

JORDYN FLINN, APPELLEE, V.
ADAM STRODE, APPELLANT.

JORDYN FLINN, APPELLEE, V.
AMY STRODE, APPELLANT.

___ N.W.3d ___

Filed February 6, 2026.    Nos. S-25-064, S-25-065.

1. **Moot Question: Judgments: Appeal and Error.** A mootness determination that does not involve a factual dispute is determined by an appellate court as a matter of law, which an appellate court determines independent of the lower court's decisions.
2. **Judgments: Statutes: Appeal and Error.** When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below.
3. **Moot Question: Protection Orders: Appeal and Error.** The expiration of a harassment protection order renders an appeal from its issuance and affirmance moot.
4. **Moot Question: Dismissal and Nonsuit.** A moot case is subject to dismissal.
5. **Moot Question: Public Officers and Employees: Appeal and Error.** Nebraska recognizes a public interest exception to the mootness doctrine, and in determining whether it applies in a given case, an appellate court is required to consider (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for the guidance of public officials, and (3) the likelihood of recurrence of the same or a similar problem.
6. **Criminal Law.** Under Neb. Rev. Stat. § 28-311.02(2)(a) (Reissue 2016), the inquiry of whether the course of conduct directed at a specific person serves a legitimate purpose consists of two parts: (1) whether the actor genuinely holds a justifiable purpose for engaging in the course of

conduct and (2) whether the course of conduct is in logical service of such purpose under the circumstances.

Appeals from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Appeals dismissed.

Erik W. Fern, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., for appellants.

Trevin H. Preble and Coehn W. Preble, of Preble Law Firm, P.C., L.L.O., for appellee.

FUNKE, C.J., CASSEL, STACY, PAPIK, FREUDENBERG, and BERGEVIN, JJ., and WELCH, Judge.

BERGEVIN, J.

## INTRODUCTION

In this consolidated appeal, Adam Strode and Amy Strode each appealed from the district court's affirmances of its previously issued ex parte harassment protection orders.[1] While this case was pending on appeal, the issued and affirmed protection orders expired, and the Strodes' appeals have been rendered moot.[2] However, because we have not previously addressed the phrase "which serves no legitimate purpose" under Neb. Rev. Stat. § 28-311.02(2)(a) (Reissue 2016), we determine that the public interest exception to our mootness doctrine applies, and we address the statutory language here.

## BACKGROUND

Because we are not addressing the merits of the Strodes' appeal, limited background information is necessary for our discussion of the sole legal question. We focus on the facts necessary thereto.

---

[1] See Neb. Rev. Stat. § 28-311.09(9) (Cum. Supp. 2024). See, also, Neb. Rev. Stat. § 26-109(5) (Supp. 2025); 2025 Neb. Laws, L.B. 80, § 9.

[2] See, *Weatherly v. Cochran*, 301 Neb. 426, 918 N.W.2d 868 (2018); *Hron v. Donlan*, 259 Neb. 259, 609 N.W.2d 379 (2000).

The Strodes and Jordyn Flinn are neighbors. The rear of the Strodes' home is adjacent to the rear of Flinn's home. Their backyards are separated by a narrow green commons area, and the homes' decks face each other. For the purpose of this appeal, it suffices to say that substantial animosity existed between the parties before Flinn filed her petitions for harassment protection orders.

Flinn's petitions for harassment protection orders were filed on December 17, 2024, and concern events that occurred in December 2024. In her petitions, Flinn alleged that she was engaged in litigation against the Strodes, that the Strodes had admitted in that case to utilizing police resources to obtain information about her, and that after notice and citation by "animal control" weeks earlier, the Strodes continued to allow their dogs to "run at large." Flinn further alleged that the Strodes installed a work light as an exterior security light and left it on for a full week, which work light shone into Flinn's home, and that the Strodes subsequently replaced the work light with another to remediate the light that shone into her next-door neighbor's home—but not Flinn's. Flinn also alleged that she felt "like [she] was being followed at times when [she] le[ft] her home," and she claimed this feeling was corroborated by an incident when she was walking her dog in a neighboring residential neighborhood and the Strodes stopped their vehicle when they were driving by to take photographs of her.

The district court granted Flinn's petitions and issued ex parte harassment protection orders that day, December 17, 2024. The protection orders were ordered effective for 1 year. The Strodes requested a show cause hearing, which came before the court on January 14 and 16, 2025. Much evidence was adduced at the show cause hearing. However, it is largely not relevant to the issue of the meaning of a course of conduct "which serves no legitimate purpose" under § 28-311.02(2)(a).

The Strodes asserted that when they stopped their vehicle to take photographs of Flinn, they did so with the purpose of

documenting the length of Flinn's dog leash in order to report her potential violation of an ordinance. The Strodes generally asserted four legitimate purposes for installing the work light to illuminate their backyard. However, they can be summarized into two purposes: for security and, simply, because it was lawful for them to do so.

The district court found no credence in the Strodes' asserted legitimate purposes. It found that the Strodes engaged in a course of conduct directed at Flinn "meant to" intimidate her and that, implicitly, a reasonable person would be intimidated by the Strodes' course of conduct. It concluded that "[t]his is a clear case of harassment" and affirmed its ex parte harassment protection orders. Accordingly, the orders would remain in effect for 1 year from the date they were issued—until December 17, 2025.

Adam and Amy each filed a timely appeal, which separate appeals were consolidated and moved to our docket on our own motion.[3]

## ASSIGNMENTS OF ERROR

As mentioned above, because the harassment protection orders have expired, we do not address the Strodes' assignments of error. Instead, we only address the meaning of a course of conduct "which serves no legitimate purpose" under § 28-311.02(2)(a).

## STANDARD OF REVIEW

[1] A mootness determination that does not involve a factual dispute is determined by an appellate court as a matter of law, which an appellate court determines independent of the lower court's decisions.[4]

[2] When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an

---

[3] See, Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024); Neb. Ct. R. App. P. § 2-102(C) (rev. 2022).

[4] See *City of Hastings v. Sheets*, 317 Neb. 88, 8 N.W.3d 771 (2024).

independent, correct conclusion irrespective of the determination made by the court below.[5]

## ANALYSIS

### Mootness

[3,4] This court has consistently recognized that the expiration of a harassment protection order renders an appeal from its issuance and affirmance moot.[6] Mootness refers to events occurring after the filing of a suit that eradicate the requisite personal interest in the dispute's resolution that existed at the beginning of the litigation.[7] An action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action.[8] A moot case is one that seeks to determine a question that no longer rests upon existing facts or rights—i.e., a case in which the issues presented are no longer alive.[9] The central question in a mootness analysis is whether changes in circumstances have forestalled any occasion for meaningful relief.[10] A moot case is subject to dismissal.[11]

Here, the harassment protection orders issued by the district court have expired. Accordingly, the Strodes now lack a legally cognizable interest in the outcome of their appeals. The expiration of the harassment protection orders has forestalled any occasion for meaningful relief.

[5] As a general rule, a moot appeal is subject to summary dismissal.[12] However, Nebraska recognizes a public interest

---

[5] *State v. Dolinar*, 319 Neb. 565, 24 N.W.3d 30 (2025).

[6] See, *Weatherly v. Cochran, supra* note 2; *Hron v. Donlan, supra* note 2.

[7] *City of Hastings v. Sheets, supra* note 4.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] See *id.*

exception to the mootness doctrine, and in determining whether it applies in a given case, an appellate court is required to consider (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for the guidance of public officials, and (3) the likelihood of recurrence of the same or a similar problem.[13] In this case, these three factors all weigh in favor of us addressing the meaning of a "legitimate purpose" under § 28-311.02(2)(a). We elect to do so.

### "Legitimate Purpose"

The definition of harassment is provided by § 28-311.02(2)(a): "Harass means to engage in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose."

The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.[14] Statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning.[15] It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.[16] In construing a statute, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent as deduced from the whole will prevail over that of a particular part considered separately.[17] Statutes pertaining

---

[13] See, *id*; *NP Dodge Mgmt. Co. v. Holcomb*, 314 Neb. 748, 993 N.W.2d 105 (2023).

[14] *Khaitov v. Greater Omaha Packing Co.*, 319 Neb. 932, 25 N.W.3d 739 (2025).

[15] *Id.*

[16] *Johnson v. City of Omaha*, 319 Neb. 402, 23 N.W.3d 420 (2025).

[17] *Id*.

to the same subject matter should be construed together; such statutes, being in pari materia, must be construed as if they were one law, and effect must be given to every provision.[18] To give effect to all parts of a statute, a court will attempt to reconcile different provisions so they are consistent, harmonious, and sensible and will avoid rejecting as superfluous or meaningless any word, clause, or sentence.[19]

The Strodes argue that we should conclude the word "legitimate" means "lawful."[20] In support, the Strodes cite Black's Law Dictionary's first definition of "legitimate": "[c]omplying with the law, an applicable rule or regulation, or a recognized principle; lawful."[21] Thus, they reason, "all lawful conduct regardless of . . . the person's subjective motivation for the conduct" serves a legitimate purpose,[22] and "for conduct to 'serve[] no legitimate purpose' it must be unlawful conduct."[23] We are unpersuaded by the Strodes' argument.

We note that the Strodes' proposed meaning of "legitimate," i.e., "permitted by law," is synonymous with "lawful" and "legal."[24] If a person must engage in illegal conduct in order for the person to engage in conduct that constitutes harassment, the intent of the Legislature set forth in § 28-311.02(1), particularly to "protect victims," would largely be defeated.[25] Such an interpretation would also render the offense of

---

[18] *Id.*

[19] *Id.*

[20] Brief for appellant in case No. S-25-064 at 19; brief for appellant in case No. S-25-065 at 19.

[21] Black's Law Dictionary 1082 (12th ed. 2024).

[22] Brief for appellant in case No. S-25-064 at 19; brief for appellant in case No. S-25-065 at 19.

[23] Brief for appellant in case No. S-25-064 at 23; brief for appellant in case No. S-25-065 at 23.

[24] See Merriam-Webster Thesaurus 416 (2005).

[25] See, also, *In re Interest of Jeffrey K.*, 273 Neb. 239, 728 N.W.2d 606 (2007).

stalking,[26] which requires the perpetrator to willfully harass another, largely superfluous: If only illegal conduct could constitute harassment, there would be no need to criminalize willful harassment.

The statutes concerned with harassment and stalking expressly recognize that lawful conduct can be of such a nature to rise to the level of harassment, and in extreme cases, the criminal offense of stalking.[27] For example, § 28-311.02(2)(b) plainly contemplates that "telephoning, contacting, or otherwise communicating with [a] person" may serve no legitimate purpose, even though telephoning, contacting, and communicating with a person is permitted by law. We have recognized that harassment may consist of making phone calls and sending text messages, even though making phone calls and sending text messages are, themselves, lawful activities.[28] We decline to adopt the Strodes' proposed meaning of "legitimate" as it is used within § 28-311.02(2)(a).

Instead, we find the next two definitions of "legitimate" from Black's Law Dictionary more appropriate in the context of § 28-311.02(2)(a): "2. In accordance with logic and sound reasoning; justifiable <a legitimate conclusion>. 3. Normal or regular in type or kind; genuine, authentic, or valid <a legitimate complaint>."[29] These definitions more properly

---

[26] See Neb. Rev. Stat. § 28-311.03 (Reissue 2016).

[27] See *id.*

[28] See *Diedra T. v. Justina R.*, 313 Neb. 417, 984 N.W.2d 312 (2023).

[29] Black's Law Dictionary, *supra* note 21 at 1082. See, The Century Dictionary of the English Language 3403 (1889) ("[j]ustly based on the premises; logically correct, allowable, or valid: as, a *legitimate* result; *legitimate* arguments or conclusion"); The American Heritage Dictionary of the English Language 1004 (5th ed. 2016) ("[v]alid or justifiable" and "[b]ased on logical reasoning"); "Legitimate," Merriam-Webster.com, https://merriam-webster.com/dictionary/legitimate (last visited Jan. 29, 2026) ("being exactly as intended or presented : neither spurious nor false" and "conforming to recognized principles or accepted rules and standards . . . *also* : fair or reasonable : valid").

focus on the legitimacy of the purpose for the conduct, as § 28-311.02 requires.

Additionally, we note that reading § 28-311.02(2)(a) in pari materia with § 28-311.02 (2)(b), the course of conduct must evidence a continuity of that legitimate purpose. As a justice of the Michigan Supreme Court succinctly stated when considering that state's stalking statute, even when "a legitimate purpose is established, the essential question must be how the defendant's *conduct* at issue serves that legitimate purpose."[30]

[6] Accordingly, we hold that under § 28-311.02(2)(a), the inquiry of whether the course of conduct directed at a specific person serves a legitimate purpose consists of two parts: (1) whether the actor genuinely holds a justifiable purpose for engaging in the course of conduct and (2) whether the course of conduct is in logical service of such purpose under the circumstances.

Due to the expiration of the harassment protection orders, we do not consider whether the evidence showed that the Strodes' course of conduct directed at Flinn had no legitimate purpose.

## CONCLUSION

Because the harassment protection orders in this case have rendered the Strodes' appeals moot, we dismiss their appeals.

Appeals dismissed.

---

[30] *Nastal v. Henderson & Associates Invest.*, 471 Mich. 712, 727, 691 N.W.2d 1, 9 (2005) (Cavanagh, J., dissenting; Kelly, J., agrees).